IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

NOV 1 4 2002  JS

MICHAEL N. MILBY, CLERK OF COURT

| | | |
|---|---|---|
| JUAN VELA, ET AL., | § | |
| Plaintiffs | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-97-3471 |
| | § | |
| THE CITY OF HOUSTON, | § | |
| Defendant | § | |

## CITY OF HOUSTON'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant, the City of Houston ("the City"), files this motion for summary judgment, as follows:

### 1.    Introduction.

On appeal, the Fifth Circuit remanded this case solely for a determination of the amount of overtime to be awarded to the Daley Plaintiffs. *See Vela v. City of Houston*, 276 F.3d 659, 683 (5th Cir. 2001)("[W]e REVERSE the district court's grant of summary judgment in favor of the City and REMAND for entry of judgment in favor of the Daley Plaintiffs following a determination of the amount of overtime compensation owed by the City to the Daley Plaintiffs").

The determination of the amount of overtime compensation owed to the Daley Plaintiffs is not a simple mathematical calculation.  Among other things, this Court must determine whether a putative plaintiff **is** a Daley Plaintiff, whether that plaintiff has already been paid for his or her overtime work by the City, whether that plaintiff—or any other plaintiff—is estopped from recovery of overtime compensation from the City, and whether

#229    1

the City has properly been sued.  The purpose of this motion for summary judgment is to provide the Court with answers to those questions.

## 2.   Standard of Review.

Although this Court is very familiar with the standards for summary judgment, those standards are repeated here so that the issues raised can be placed in the proper context.

Summary judgment is proper when the facts and law show that no reasonable trier of fact could find for the nonmoving party as to any material fact. FED. R. CIV. P. 56; *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Properties, Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir.1998) (citing *Celotex*, 477 U .S. at 322-25). If the movant meets its burden, the nonmovant must go beyond the pleadings and designate specific facts showing that a genuine issue of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir.1998).  The party that opposes summary judgment may not rest on mere conclusory allegations or denials in its pleadings, unsupported by specific facts presented in affidavits opposing the motion for summary judgment. FED. R. CIV. P. 56(e); *Lujan*, 497 U.S. at 888; *Hightower v. Texas Hosp. Assn.*, 65 F.3d 443, 447 (5th Cir.1995).  In determining whether genuine issues of fact exist, "[f]actual

controversies are construed in the light most favorable to the nonmovant, but only if both

parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625;

*see also Eastman Kodak v. Image Technical Services*, 504 U.S. 451 (1992). However, in the

absence of any proof, the Court will not assume that the nonmoving party could or would

prove the necessary facts. *Lynch*, 140 F.3d at 625. A party must do more than simply show

some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The mere

existence of some factual dispute will not defeat a motion for summary judgment. *Willis v.

Roche Biomedical Lab., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). Only disputes over facts that

might affect the outcome of the suit under governing law will preclude summary judgment.

*Id.* Moreover, a dispute about a material fact is genuine only if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party. *Id.* "If the record, taken as

a whole, could not lead a rational trier of fact to find for the non-moving party, there is no

genuine issue for trial."*Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir.1991).

### 3.   Facts.

With regard to the issues raised in this motion for partial summary judgment, the facts

are undisputed.  Those facts are stated in the Fifth Circuit opinion, in pleadings filed in the

Fifth Circuit, and in pleadings filed in this Court.

On October 25, 1995, the Vela Plaintiffs filed suit against the City of Houston ("the

City"), "claiming that they were entitled to overtime pay under state law and under the Fair

Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, et seq. (1998)." *See Vela v. City of*

*Houston*, 276 F.3d 659, 664 (5th Cir. 2001).[1]  The Vela Plaintiffs were defined by the Fifth

Circuit as "a group of approximately 2,600 fire department employees consisting of fire

suppression, telemetry, dispatch and arson investigation personnel." *Id.*

      After removal to federal court, on April 15, 1999, the Daley Plaintiffs filed a separate

suit "claiming that they were not fire protection employees for purposes of the FLSA." *Id.*

Specifically, the Daley Plaintiffs included Philip E. Daley, Tiera Angelle Leger, Richard

Wayne Medeiros and Clint Hendrix. *See* Docket Entry 83 (Daley Plaintiffs' Original

Complaint and Request for Declaratory Relief).  The Fifth Circuit noted that the Daley

Plaintiffs were paramedics and emergency medical technicians ("EMTs") employed by the

City of Houston Fire Department. *Vela*, 276 F.3d at 663.  The Fifth Circuit further defined

the Daley Plaintiffs as a "subset" of the Vela Plaintiffs group, and noted that in the Vela

Plaintiffs' suit "[t]he paramedics and EMTs (including the Daley Plaintiffs) were classified

as fire suppression personnel . . ." *Id.* at 663 n.1.  On August 6, 1999, this Court consolidated

the Daley Plaintiffs suit with the Vela Plaintiffs suit. *Id.* at 664; *see* Docket Entry 102.  The

City moved for partial summary judgment as to the claims raised by the Daley Plaintiffs in

their April 15, 1999 complaint. *Id.*; *see* Docket Entry 118.  On March 22, 2000, this Court

granted the City's motion for summary judgment, holding that the "EMTs and paramedics

are fire protection personnel" and "[t]hey will be paid on the same basis as fire suppression

---

[1] Actually, the Vela Plaintiffs did not mention federal law until their answers to Defendant's Second Interrogatories, which resulted in removal of the case in 1997 to this Court. *See* Docket Entry 172, at City's Exhibits 1 and 2 to that motion.

personnel, as described in the court's opinion on partial summary judgment signed on September 24, 1998." *Id.*; *see* Docket Entry 136.

Meanwhile, with regard to the Vela Plaintiffs, this Court granted partial summary judgment for them on their FLSA claims on September 24, 1998, but did not award any specific amounts for unpaid overtime at that time. *Vela*, 276 F.3d at 664.  With regard to the telemetry, dispatch, and arson investigation personnel, the Court entered an Agreed Partial Summary Judgment on May 28, 1999, awarding them $5,489,590.62.  With regard to the fire suppression personnel, the Fifth Circuit held that they were paid $4,436,819.12 as a "settlement." *Id.*  On July 11, 2000, this Court entered a Final Judgment in the case. *See* Docket Entry 151.

On appeal, the Fifth Circuit reversed the summary judgment granted to the Daley Plaintiffs and remanded "for entry of judgment in favor of the Daley Plaintiffs following a determination of the amount of overtime compensation owed by the City to the Daley Plaintiffs." *Vela*, 276 F.3d at 683.  However, with regard to the Vela Plaintiffs, the Fifth Circuit, on the urging of the Vela Plaintiffs as Appellees, held that any issues regarding their claims were moot "because the parties have already settled the underlying claim." *Id.* at 682. The Fifth Circuit specifically held, "the City paid the Vela Plaintiffs just under ten million dollars (plus pension contributions and statutory interest attributable to that amount) for overtime work. Given this fact, we find the City's contention that there was no settlement implausible." *Id.*  Thus, the Fifth Circuit affirmed the Court's final judgment as to the Vela

Plaintiffs, including the attorney's fees awarded. *Id*. at 683; *see also* Exhibit 1 (Judgment of Fifth Circuit).[2]

## 4.    Argument.

**A.    The Plaintiffs' Efforts To Impose Federal Regulation On Traditional State Functions Are Barred By The Tenth Amendment.**

The Tenth Amendment provides that " [t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend X.  It has been said that "[t]he amendment states but a truism that all is retained which has not been surrendered." *See United States v. Darby*, 312 U.S. 100, 124, 61 S.Ct. 451, 462, 85 L.Ed. 609 (1941).

Tenth Amendment jurisprudence has gone through a number of dramatic shifts in the past few decades.  The first modern case to breathe life into the Tenth Amendment was *National League of Cities v. Usery*, 426 U.S. 833 (1976).  In that opinion, then Justice Rehnquist wrote that the FLSA was unconstitutional in that it violated the Tenth Amendment right of states to structure employer-employee relationships in areas of traditional governmental functions, such as fire prevention, police protection, sanitation, public health, and parks and recreation. *Id*. at 851-52.

Less than ten years later, the Supreme Court did an about face in *Garcia v. San Antonio Metro Transit Auth*., 469 U.S. 528 (1985).  In *Garcia*, a sharply divided Court

---

[2]  The City has filed a motion to limit the scope of the case on remand to the four Daley Plaintiffs.  If the Court grants that motion, that will obviate the need to address the alternate argument presented here with regard to the right of any of the Vela Plaintiffs to recover additional amounts of money from the City based once again on FLSA overtime.

overruled *Usery* and held that Tenth Amendment issues were basically political in nature, not subject to judicial intervention. *Id.* at 557.[3] Justice O'Connor, in a strong dissent, rebuked the decision in *Garcia*, and warned of the day in which the Court would once again "assume its constitutional responsibility." *Id.* at 589 (O'Connor, J., dissenting). In order to invoke Tenth Amendment protection after *Garcia*, the Court held that a state must show that "it was deprived of any right to participate in the national political process or that it was singled out in a way that left it politically isolated and powerless." *See South Carolina v. Baker*, 485 U.S. 505, 513 (1988). Thus, after *Garcia*, the Tenth Amendment battles were to be fought on the political, rather than judicial, front.

Less than ten years after *Garcia*, the Court did another about face and held that the Tenth Amendment did have some judicial teeth after all. *New York v. United States*, 505 U.S. 144 (1992). The question in *New York* was whether state governments could be compelled to comply with the national Low-Level Radioactive Waste Policy Act. Justice O'Connor wrote that the portion of the Act which served to "commandeer" the state government "into the service of federal regulatory purposes" was invalid as a violation of the Tenth Amendment. *Id.* at 175.

After *New York*, commentators believed that the Court implicitly overruled *Garcia*, to return to the *Usery* analysis. *See e.g.*, Maxwell A. Miller & Mark A. Glick, *The Resurgence of Federalism: The Case for Tax-Exempt Bonds*, 19 MUN. FIN. J. 46, 64 (Winter 1999) ("*South Carolina's* Tenth Amendment holding is simply no longer good law . . . .

---

[3] This was a 5-4 decision authored by Justice Blackmun, with Chief Justice Burger, and Justices Rehnquist, Powell and O'Connor in dissent.

[R]ecent cases, notably *New York v. United States* and *United States v. Lopez*, have effectively overruled *South Carolina's* narrow view of Tenth Amendment guarantees." Those recent cases "are firmly based upon the premise that the Tenth Amendment embraces substantive, not merely procedural, states' rights."); Note, *Clear Statement Rules, Federalism, and Congressional Regulation of States*, 107 HARV. L. REV. 1959, 1966 (1994) ("*Baker's* broad reading of *Garcia* was emphatically rejected, however, in *New York v. United States . . . .*"); Nicholas J. Johnson, *EPCRA's Collision with Federalism*, 27 IND. L. REV. 549, 555 n.33, 557-58  (1994) (observing after *New York* that "[t]he *Garcia* dissenters who predicted a shift back toward a substantive Tenth Amendment seem to guide the majority at present" and that *New York* "represents a clear shift from the message of *Garcia*" toward a substantive protection like that of *National League of Cities* at least for commands to state legislatures).

The belief that the Court has overruled both the letter and the spirit of *Garcia* has been confirmed in both Supreme Court and in Fifth Circuit case law.  In *United States v. Lopez*, the Supreme Court held that a national Act that sought to regulate firearms in school zones violated the Tenth Amendment, because that Act interfered with the sovereign right of states to exercise their traditional police powers. *See United States v. Lopez*, 514 U.S. 549, 564 (1995).  While the impact of *Lopez* may not have been fully realized at the time it was issued, that impact was explained by the Court in *United States v. Morrison*, 529 U.S. 598 (2000).

*Morrison* recognized that the *Lopez* court held that the power of Congress to legislate in areas of traditional state functions is limited. Indeed, in language applicable to the present case, the Court held:

> With its careful enumeration of federal powers and explicit statement that all powers not granted to the Federal Government are reserved, the Constitution cannot realistically be interpreted as granting the Federal Government an unlimited license to regulate . . . And, as discussed above, the Constitution's separation of federal power and the creation of the Judicial Branch indicate that disputes regarding the extent of congressional power are largely subject to judicial review. . . Moreover, the principle that "'[t]he Constitution created a Federal Government of limited powers,'" while reserving a generalized police power to the States, is deeply ingrained in our constitutional history.

*Id*. at 618-19. And, there is no doubt that the "traditional state functions" that are the focal point of both *Lopez* and *Morrison* include the local government's traditional regulation of its own fire safety workers. *See Hybud Equip. Corp. v. City of Akron*, 654 F.2d 1187, 1192 (6th Cir.1981) (listing fire and police protection and garbage collection as "paradigmatic example[s] of the exercise of municipal police powers reserved to state and local governments under the Tenth Amendment . . . [and which ordinances] are rationally related to a matter of legitimate local concern.").

The Fifth Circuit recognized the renewed vitality of the Tenth Amendment in *Acorn v. Edwards*, 81 F.3d 1387 (5th Cir. 1996). In *Acorn,* a public interest group of concerned parents sued Louisiana State executive officials to force the state into compliance with the National Lead Contamination Control Act of 1988. The Fifth Circuit held that, under the Tenth Amendment, the federal government cannot force a state to comply with such a federal

law. *Id.* at 1392-93. Of importance to this discussion, the Fifth Circuit framed the inquiry as follows:

> Thus, when an Act of Congress is challenged under the Tenth Amendment, we must be concerned not only with whether Congress has the power under Article I to regulate the activity in question, but also with whether the method by which Congress has chosen to regulate the activity pursuant to that power invades that province of state sovereignty protected by the Tenth Amendment.

*Id.* at 1393. The Fifth Circuit then held that the requirements of the Act violated the Tenth Amendment and that the Act was unconstitutional. *Id.* at 1395. Although the Fifth Circuit did not discuss where the lines may be drawn, the court held: "Whatever the outer limits of that sovereignty may be, one thing is clear: The Federal Government may not compel the States to enact or administer a federal regulatory program." *Id.* at 1394.

Thus, the FLSA can no longer stand on *Garcia* as its base for imposing federal regulation on traditional state functions, like the functions of the firefighters, EMTs and paramedics in this case. The City of Houston urges this Court to recognize that *Garcia* is no longer good law, and that the Plaintiffs' attempts to impose federal regulation on matters of local concern are barred by the Tenth Amendment to the United States Constitution. The Tenth Amendment precludes this Court from entry of a judgment that attempts to regulate

the City's payment of wages under the FLSA.[4]  For that reason, the claims of all plaintiffs should be dismissed.

**B.      The Vela Plaintiffs' Claims Are Barred Because Of Judicial Estoppel.**

In addition to the Tenth Amendment bar, the Vela Plaintiffs' claims are now barred because, in the Fifth Circuit, they successfully  took the position that their FLSA overtime claims were settled.  Now, they take the position that there are, in fact, unresolved overtime issues with regard to them and that they can collect additional payments for overtime under the FLSA.  The law will not permit a party to talk out of both sides of its mouth

The Fifth Circuit identified the Vela Plaintiffs as "a group of approximately 2,600 fire department employees consisting of fire suppression, telemetry, dispatch and arson investigation personnel." *See Vela v. City of Houston*, 276 F.3d 659, 664 (5th Cir. 2001).  In *Vela*, the Fifth Circuit held that all issues with regard to payment of "overtime work" under the FLSA for the Vela Plaintiffs were moot because they had settled their claims. *Id*. at 683. Specifically, the Fifth Circuit held:

> Thus, the City paid the Vela Plaintiffs just under ten million dollars (plus pension contributions and statutory interest attributable to that amount) for overtime work.  Given this fact, we find the City's contention that there was no settlement implausible.   The two City Council motions refer to a "settlement." The Agreed Partial Summary Judgment strongly suggests a settlement.  For these reasons, we find that Issues 1,

---

[4] The City has not waived this Tenth Amendment defense by not asserting it until now.  The Court's lack of subject matter jurisdiction cannot be waived. *See Ziegler v. Champion Mortgage Co.*, 913 F.2d 228, 229 (5th Cir.1990) ("parties cannot waive a want of subject matter jurisdiction"); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)(right to object to defect in subject matter jurisdiction is never waived).

> 2 and 3 have been settled by the parties. Therefore, we have no
> jurisdiction to decide the issues.

*Id.* In other words, because the Fifth Circuit found that the Vela Plaintiffs had settled their

FLSA overtime claims, all issues regarding the City's payments to them were moot. *Id.*

Thus, at least as far as the Fifth Circuit was concerned, the issues between the Vela Plaintiffs

and the City regarding FLSA overtime were final, and the Fifth Circuit did not have any

jurisdiction to resolve them. *Id.*

### (1)    In the Fifth Circuit, the Vela Plaintiffs successfully advanced the argument that all of their FLSA overtime claims were settled.

The Fifth Circuit did not, on its own, come up with the idea that the Vela Plaintiffs

had settled all their overtime claims and that all issues between the Vela Plaintiffs and the

City were final and unappealable.  No, that was the very argument that the Vela Plaintiffs

advanced in the Fifth Circuit.  One need only look at the various briefs filed by the Vela

Plaintiffs to see that argument made over and over again, until it was accepted by the Fifth

Circuit.

In the Fifth Circuit, on January 25, 2001, the Vela Plaintiffs filed a Motion to Dismiss

as Moot Portions of the City of Houston's Appeal Due to Settlement. The City responded,

and then the Vela Plaintiffs filed a Reply in Support of Motion to Dismiss As Moot Portions

of the City of Houston's Appeal Due to Settlement. *See* Exhibit 2.  In that document, the

Vela Plaintiffs made the following arguments:

> The City of Houston asserts that it did not receive anything in
> return for settlement of the overtime claims . . . **However, the**

> **settlement payments made by the City of Houston for the
> fire suppression overtime claims constitute a complete bar
> to any further prosecution of such actual damages claims by
> Cross-Appellees.**

*Id.*, Exhibit 2, at 2-3(emphasis added).

> The Joint Status Report clearly reflects that counsel for the City
> of Houston and counsel for Cross-Appellees were negotiating
> with each other to arrive at the specific amounts owed to Cross-
> Appellees for their overtime claims . . .The record clearly
> reflects the settlement payments in this case were the result of
> compromise negotiations between respective counsel for the
> parties.

*Id.* at 3-4.

> The City of Houston cannot demonstrate that **its settlement of
> the overtime claims** in this case was involuntary or was to
> prevent immediate seizure of its property.

*Id.* at 5 (emphasis added).

> The City of Houston voluntarily settled with Cross-Appellees,
> paid the individual Cross-Appellees, and paid the Houston
> Firefighters' Relief and Retirement Fund the City's portion of

> its pension contributions attributable to the settlement amounts
> paid to the Cross-Appellees.
>
> Cross-Appellees request that this Court dismiss as moot Issues
> 4, 5, and 6 raised by the City of Houston due to the settlement of
> those claims.

Id. at 6-7.

The parties, including the Vela Plaintiffs, filed briefs on the merits. The Vela Plaintiffs did not address the settlement issue until they filed a document styled "Corrected Brief for Cross-Appellees Philip E. Daley, et al. and Reply Brief for Appellants Philip E. Daley, et al.", which was a reply to the Brief filed by the City of Houston. *See* Exhibit 3, at 8 (explains format of brief).

In the opening salvo of that brief, the Vela Plaintiffs advanced the following argument:

> The majority of the City of Houston's appellate arguments are
> moot and this Court has no jurisdiction to consider them. **The
> parties to this appeal have settled with each other with
> respect to the amounts owed for overtime to fire
> suppression, telemetry, dispatch and arson personnel.** The
> City of Houston has paid approximately $10,000,000 to settle
> such claims. The **only issue** relating to fire suppression,
> telemetry, dispatch and arson personnel which remains a live

controversy is the district court's award of attorney's fees to

counsel for Appellants/Cross-Appellees in the amount of

$2,800,000. **All other issues have been settled, rendering**

**them moot and depriving this Court of jurisdiction to**

**consider the City of Houston's appellate arguments,** other

than the award of attorney's fees.

*Id.*, Exhibit 3, at 1(emphasis added).

The other arguments advanced by the Vela Plaintiffs throughout this brief follow a

similar pattern:

With regard to those employees who worked in fire suppression,

their claims were also settled and the City of Houston paid

$4,436,819.12 to suppression personnel in settlement of such

claims.

*Id.* at 4.

The issue of overtime pay for fire suppression for 1997 is moot

as the City of Houston **has settled with all fire suppression**

**personnel and paid them for their overtime claims for all**

**outstanding years** . . . The City of Houston has settled with fire

suppression personnel and cannot recover the payment voluntarily made for the 1997 year.[5]

*Id.* at 20 (emphasis added).

The Vela Plaintiffs then quoted from the City motion by Council Member Boney which recommended "**settlement of the overtime claims of certain Plaintiffs** and Plaintiff-Intervenors in lawsuit styled Juan Vela, et al. v. City of Houston . . . ." Then, the Vela Plaintiffs said, "**The settlement of these suppression overtime claims** renders the City of Houston's appellate arguments moot."

Id. at 20-21.[6] (emphasis added).

As discussed in detail in the immediately preceding section of this Brief, **the City of Houston has settled the overtime claims of the fire suppression personnel** by paying them $4,436,819.12. The parties agreed to the amounts for overtime for the fire suppression personnel utilizing the 80 hour two week work period complained of by the City of Houston. **Since those claims have been paid and settled**, the appellate complaint

---

[5] The City contended that because of a change in state law in 1997, they should not have been ordered to pay overtime for the 1997 year. However, the Vela Plaintiffs argued successfully that all overtime claims had been settled so that settlement mooted the issue. *See* Exhibit 3, at 20.

[6] The full text of the Council Member's motion is found in the Vela Plaintiffs' brief, Exhibit 3, at 20.

raised by the City of Houston is moot and this Court has no

jurisdiction to consider same for the reasons and authorities

discussed in the prior section.

*Id*. at 24-25 (emphasis added).

The Court cannot entertain the argument made by the City of

Houston **because the underlying overtime claims have been**

**settled thereby rendering the issue moot.**

*Id*. at 26 (emphasis added).

**(2)      Judicial estoppel prevents the Vela Plaintiffs from arguing now that they are entitled to additional overtime under FLSA.**

As shown above, in the Fifth Circuit, the Vela Plaintiffs took the unequivocal position

that all of their FLSA overtime claims were settled, thereby making the judgment as to them

final and unappealable, rendering all issues with regard to their FLSA overtime moot. *See*

Exhibit 3, at 4 ("The only issue . . . which remains . . is the district court's award of

attorney's fees . . ."). Now, in this Court, the same Vela Plaintiffs are taking the contrary

position that the City owes them more money under the FLSA for overtime. The City asks

this Court to enter an order that precludes the Vela Plaintiffs from making any further

demands for FLSA overtime. The doctrine of judicial estoppel compels such an order.

Under the doctrine of judicial estoppel, "a party cannot advance one argument and

then, for convenience or gamesmanship after that argument has served its purpose, advance

a different and inconsistent argument." *Hotard v. State Farm Fire and Cas. Co.*, 286 F.3d

814, 818 (5th Cir. 2002). The purpose of the doctrine is to protect "the integrity of the

judicial process . . ." *Texaco Inc. v. Duhe*, 274 F.3d 911, 923-24 (5th Cir. 2001); *see also McNemar v. Disney Store, Inc.*, 91 F.3d 610, 616 (3d Cir.1996) ("The doctrine of judicial estoppel serves a consistently clear and undisputed jurisprudential purpose: to protect the integrity of the courts"), *cert. denied*, 519 U.S. 1115, 117 S.Ct. 958, 136 L.Ed.2d 845 (1997); *United States v. McCaskey*, 9 F.3d 368, 379 (5th Cir.1993) (purpose of doctrine is "to protect the integrity of the judicial process and to prevent unfair and manipulative use of the court system by litigants"), *cert. denied*, 511 U.S. 1042, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994); *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir.)("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process"), *cert. denied*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990); *Lewandowski v. National R.R. Passenger Corp.*, 882 F.2d 815, 819 (3d Cir.1989) ("such use of inconsistent positions would most flagrantly exemplify that playing fast and loose with the courts which has been emphasized as an evil the court should not tolerate"); *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir.1988)(the purpose of the doctrine is "to protect the integrity of the judicial process", by "prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest").

Here, it would be a "perversion of the judicial process" to permit the Vela Plaintiffs to argue that they are entitled to more money from the City under the FLSA for overtime work when they successfully argued to the Fifth Circuit that they had settled their claims and all issues to them had been resolved. Because, as a result of their successful argument, each Vela Plaintiff has already been compensated for his or her FLSA overtime claims by

unappealable settlement, and those Plaintiffs are judicially estopped to now claim that there are unresolved issues as to FLSA overtime or additional monies that the City owes them.

For this reason, this Court should grant partial summary judgment that prevents all of the Vela Plaintiffs who participated in the settlements from additional recovery of payments by the City for FLSA overtime.

## C. The Vela Plaintiffs' Claims Are Barred By Waiver.

"Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). The Vela Plaintiffs, both expressly and impliedly, waived their right to claim a right to recovery for any FLSA overtime claims, other than the ones for which they settled.

First, as set forth in their briefs in the Fifth Circuit, the Vela Plaintiffs took the position that all of their FLSA overtime claims were settled and that there were no other issues to be resolved. *See* Exhibits 2, 3. The City disagreed with this position, but the Fifth Circuit ultimately agreed with the Vela Plaintiffs and held that the Vela Plaintiffs had settled all their claims for "overtime work." *See Vela v. City of Houston*, 276 F.3d 659, 683 (5th Cir. 2001). Throughout the appeal, the Vela Plaintiffs never advised the Fifth Circuit that they had any unresolved issues regarding overtime work. The Vela Plaintiffs never told the Fifth Circuit that there were any issues that would need to be addressed on remand. In fact, before this Court, the Vela Plaintiffs led this Court to believe that all overtime issues as to them were resolved. At the attorney's fee hearing prior to the appeal, this Court said: "individually

it's not likely Mr. Blakeney will have the occasion to represent these people again [the Vela Plaintiffs], and it is virtually impossible that he will ever represent them again in a similar case." *See* Exhibit 4 (Transcript of July 10, 2000 hearing), at 13.

It is well settled that FLSA plaintiffs can waive their right to additional overtime by participating, as here, in a court-approved settlement. *See Manning v. New York University*, 2001 WL 963982, *13 (S.D. N.Y. 2001)("Thus, it is well-settled that an employee may waive a FLSA claim for unpaid wages or overtime pursuant to a judicially-supervised stipulated settlement.")(and cases cited therein).

Second, the Vela Plaintiffs waived any right to be considered part of the group of the Daley Plaintiffs' group of paramedics and EMTs.  On appeal, the Vela Plaintiffs contended that there was a bright line of demarcation between fire suppression personnel (whom the Vela Plaintiffs said they were in order to reap the benefits of the lucrative settlement) and paramedics and EMTs:

> On page 11 of its brief, the City of Houston contends that "while Appellants may be assigned EMT or paramedic duties on any given day, they continue to have the legal authority, and are fully trained, to engage in fire suppression activities." The City of Houston's argument ignores the substantial evidence presented by the Paramedics/EMTs in the trial court that they did not have the legal authority or the legal responsibility to engage in fire suppression activities because they were not

> provided with the equipment required to engage in fire
> suppression by Texas law, and, pursuant to City of Houston Fire
> Department directives, Paramedics/EMTs were not permitted to
> engage in fire suppression.

Exhibit 3, at 37.

The Vela Plaintiffs, in claiming that their overtime issues were forever settled and resolved, waived any right to claim that they are entitled to additional payments by the City for overtime work.  Further, by contending that the paramedics and EMTs could not be fire suppression personnel and by taking the position that the Vela Plaintiffs were fire suppression personnel, and by accepting payment of money in settlement of overtime claims for fire suppression personnel, the Vela Plaintiffs have waived the right to now be considered as paramedics or EMTs.[7]

**D.     The Vela Plaintiffs Claims Are Barred By Payment.**

The Vela Plaintiffs have already been paid over $10,000,000 by the City as compensation for their overtime under the FLSA.  The specific amounts of payment are stated in the Fifth Circuit opinion and are not disputed by the Vela Plaintiffs. *See Vela*, 276 F.3d at 664.  Those amounts are: $5,489,590.62 to the telemetry, dispatch, and arson investigation personnel and  $4,436,819.12 to fire suppression personnel. *Id*. The Fifth Circuit found that these payments were made pursuant to a settlement that became final when

---

[7]  The City recognizes that 173 of the Vela Plaintiffs were arson, telemetry or dispatch workers, but they cannot be considered paramedics or EMTs in any event because paramedics and EMTs are a "subset" of fire suppression. *See Vela*, 276 F.3d at 664.

final judgment was rendered. Since the City has already paid the Vela Plaintiffs for any obligation that might have existed for FLSA overtime, as a matter of law, the City is entitled to summary judgment on the additional claims that are now being asserted. *See Standard Sav. Ass'n v. Cromwell*, 714 S.W.2d 49, 51 (Tex. App.—Houston [14th Dist.] 1986, no writ)(defense of payment established when defendant tendered a check for payment of a debt).

E.     **The Vela Plaintiffs' Claims Are Barred Because Of Accord and Satisfaction**.

In addition to the defense of payment, the City relies on the defense of accord and satisfaction. An accord and satisfaction "is an agreement or settlement of an existing dispute, controversy or demand which presupposes a disagreement as to the amount due." *Sherman v. Rokacz*, 538 N.E.2d 898, 902 (Ill. App. 1st Dist. 1989). Here, the Vela Plaintiffs contended that their claims for FLSA overtime against the City were "settled." *See* Exhibit 3. Moreover, the Vela Plaintiffs acknowledged that they cashed the checks tendered to them by the City. *See* Exhibit 3, at 24-25. The Fifth Circuit found that all of the Vela Plaintiffs' FLSA overtime claims were settled. *See Vela*, 276 F.3d at 682("We find that these three issues are moot because the parties have already settled the underlying claim").

The defense of accord and satisfaction bars any further claims by the Vela Plaintiffs. It is undisputed that the City paid the Vela Plaintiffs money in order to discharge an existing obligation, and that the Vela Plaintiffs and the Fifth Circuit considered this a settlement of those obligations. "Where such tender is made in an effort to discharge or modify an existing and disputed obligation between the parties, the acceptance of such tender constitutes an

'accord and satisfaction.'" *City of Houston v. First City*, 827 S.W.2d 462, 472 (Tex. App.—Houston [1st Dist.] 1992, writ denied). In that case, the City's acceptance of checks in payment of an existing and disputed tax obligation constituted an accord and satisfaction which barred the City from further relief. *Id.* at 473 ("the acceptance of the checks constituted an accord and satisfaction."); *see also Warrior Constructors v. Small Business Investment Co.*, 536 S.W.2d 382, 386 (Tex. Civ. App.—Houston [14th Dist.] 1976, no writ)("the cashing of appellant's checks by appellee was such an exercise of dominion over such funds as to constitute an acceptance of the condition on which they were offered").

And, even if the Vela Plaintiffs contended that they were owed more money for overtime (as they are now contending before this Court), their acceptance of less than the full amount due as a "settlement" bars them from any further recovery. So held another federal court: "As a consequence, whatever bona fide dispute there existed between the parties as to liability for the amount allegedly due, and even if W.G. contends that he accepted less than he believed he was due, by accepting the agreed-upon payments W.G. is bound by an accord and satisfaction." *W.G. Pettigrew Distributing Co. v. Borden, Inc.*, 976 F.Supp. 1043, 1056 (S.D. Tex. 1996).

Thus, because the Vela Plaintiffs entered into an accord and satisfaction with regard to their disputed claims for FLSA overtime, this Court should enter judgment that bars the Vela Plaintiffs from any further recovery.

**F.      The Vela Plaintiffs' Claims Are Barred By Res Judicata.**

Since the Vela Plaintiffs' settlement of their claims became final in the prior judgment, the defense of res judicata bars the Vela Plaintiffs' attempt to now assert additional claims.  The purpose of the defense of res judicata is to ensure the finality of judicial decisions.  *Brown v. Felsen*, 442 U.S. 127, 131(1979).

Federal law determines the res judicata effect of a prior federal court judgment. *Meza v. General Battery Corp.*, 908 F.2d 1262, 1265 (5th Cir. 1990); *In re Air Crash at Dallas/Ft. Worth Airport*, 861 F.2d 814, 816 (5th Cir.1988).  The defense of res judicata is properly applied when (1) the parties in the two suits are identical; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same cause of action is involved in both cases. *Meza*, 908 F.2d at 1265; *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 188 (5th Cir.1990); *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir.1983) (en banc).

The first three elements of the res judicata defense are undisputed.  First, the parties to the two suits are identical—the Vela Plaintiffs claiming additional recovery against the City here are the same Vela Plaintiffs who sued the City and settled their prior FLSA claims. The Fifth Circuit pronounced those settlements final and unappealable. *See Vela*, 276 F.3d at 262.  Second, the prior judgment was rendered by this Court, which is a court of competent jurisdiction.  Third, there was a final judgment on the merits.  In this regard, it is established that a court-approved settlement taken to final judgment is a "final judgment on the merits" to be given "full res judicata effect." *See United States v. Shanbaum*, 10 F.3d 305, 313 (5th

Cir.1994); *see also Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir.1992) ("this court has long recognized that a consent judgment is a judgment on the merits, and is normally 'given the finality accorded under the rules of claim preclusion.'"); *Cf. Janneh v. GAF Corp.*, 887 F.2d 432, 436 (2d Cir. 1989)("A settlement is a contract, and once entered into is binding and conclusive").

The fourth element of res judicata is similarly undisputed. The Fifth Circuit, like the vast majority of other Circuit Courts of Appeal, uses a transactional test to determine if this fourth element is met. *See New York Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000)("We use a transactional test to determine whether two claims involve the same cause of action, under which the critical question is 'not the relief requested or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts.'"); *see also* Charles A. Wright & Arthur S. Miller, FEDERAL PRACTICE AND PROCEDURE § 4407. Under this transactional test, if the new claims arise out of the "same nucleus of operative facts" or are "based upon the same predicate, as a former action", then the two claims are really the same "claim" or "cause of action" for res judicata purposes. *See Russell v. SunAmerica Securities, Inc.*, 962 F.2d 1169, 1172-73 (5th Cir. 1992). Stated another way, if the new claim was, or could have been, brought in the original action, then the new claims are forever barred by the final judgment in the original action. *See Clark v. Haas Group, Inc.* 953 F.2d 1235, 1237 (10th Cir. ), *cert. denied*, 506 U.S. 832 (1992); *see also Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir.1983) (en banc) (adverse judgment on the merits

in a Title VII action barred successive § 1983 claim where primary right and duty asserted and the primary wrong complained of are the same in each action).

Because the new claims now being asserted by the Vela Plaintiffs—attempts to recover for additional FLSA overtime for hours spent on an ambulance—are claims that could have been brought (but were not) in the original action, the Vela Plaintiffs settlement of the original action forever bars the Vela Plaintiffs from any further relief against the City. The Vela Plaintiffs' attempt here to fight a new FLSA battle after they had finally settled the earlier FLSA battle is "precisely the sort of piecemeal litigation, unnecessary expense, and waste of judicial resources that the doctrine of res judicata is designed to prevent." *Clark*, 935 F.2d at 1240.

This defense of res judicata is not waived by failure to plead it. First, it is well settled, particularly where, as here, the actions occur in the same court, that the district court should grant dismissal sua sponte on res judicata, even if the defense has not been pleaded. *See Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir.1980)(even where the defense was not pleaded, court approves "[d]ismissal by the court sua sponte on res judicata grounds ... in the interest of judicial economy where both actions were brought before the same court."); *Mowbrey v. Cameron County, Tex.*, 274 F.3d 269, 281 (5th Cir. 2001); *United Home Rentals, Inc. v. Texas Real Estate Com'n*, 716 F.2d 324, 330-31 (5th Cir. 1983).

Second, it is well settled, that the defense of res judicata should be applied where, as here, the facts are undisputed, even if the defense is not pleaded. As the Fifth Circuit has held, "where all of the relevant facts are contained in the record before us and all are

uncontroverted, we may not ignore their legal effect, nor may we decline to consider the application of controlling rules of law to dispositive facts, simply because neither party has seen fit to invite our attention by technically correct and exact pleadings." *Am. Furniture Co. v. Int'l Accommodations Supply*, 721 F.2d 478, 482 (5th Cir. Unit A Mar.1981); *see Mowbrey*, 274 F.3d at 282.

Finally, the failure to plead the defense is not fatal where, as here, there is no trial setting, where the defense is argued in a motion for summary judgment, and where the nonmovant has ample time to respond to the motion. *See Mowbrey*, 274 F.3d at 282; *United States v. Shanbaum*, 10 F.3d 305, 312 (5th Cir. 1994)(defense of res judicata not waived by failure to plead it so long as it is raised "at a pragmatically sufficient time"); *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir.1986)("[w]here the matter is raised in the trial court in a manner that does not result in unfair surprise, . . . technical failure to comply precisely with Rule 8(c) is not fatal").

Because the defense of res judicata is apparent from the undisputed facts on this record, and because the Vela Plaintiffs participated in the prior judgment and are not subject to unfair surprise, this Court should grant summary judgment on all claims that are now being asserted by the Vela Plaintiffs based on the res judicata effect of the prior final settlement and judgment.[8]

---

[8] Ironically, the Vela Plaintiffs criticized the City in this Court for appealing to the Fifth Circuit claims that had been finally settled. To the extent such criticism is warranted, the Vela Plaintiffs are guilty of the same conduct. They come back to this Court trying to recover additional amounts of money from the City long after their claims have been finally paid and settled.

**G.**  **Alternatively, Under The One Satisfaction Rule, The City Is Entitled To Offset.**

Alternatively, if this Court holds that any of the Vela Plaintiffs are entitled to any additional damages, then those damages should be offset by the amounts already paid in settlement of this litigation and other awards and settlements.

The theory behind the defense of offset is that the plaintiff is not entitled to double recovery. *See Krieser v. Hobbs*, 166 F.3d 736, 743 (5th Cir. 1999)("set-offs for settlement and the 'one-satisfaction' rule exist to prevent the plaintiff from recovering twice from the same assessment of liability."); *Temple v. FDIC*, 988 F.2d 24, 27 (5th Cir. 1993)("The one satisfaction rule is based on the notion that allowing double recovery is ordinarily against public policy."). Thus, under the rule of offset and the one satisfaction rule, the Court should allow the City an offset for monies already paid to the Vela Plaintiffs and avoid a double recovery.

**(1).**  **The City is entitled to offset of all payments made to the Vela Plaintiffs.**

In this case on remand, the Vela Plaintiffs contend that they, in addition to the Daley Plaintiffs, have a right to a redetermination of their overtime hours for purposes of payment of overtime hours to paramedics and EMTs under the FLSA.  In making these calculations, the Vela Plaintiffs are seeking to have this Court or the jury take into consideration all hours for overtime work over 40 hours, without backing out any monies already paid for overtime

work in the prior settlement. Thus, what the Vela Plaintiffs ask this Court to approve is a double recovery of overtime damages.[9]

If the Court does not dismiss these belated claims of the Vela Plaintiffs, the Court should at least give the City an offset against the final recovery based on monies that the City already paid: $5,489,590.62 to the telemetry, dispatch, and arson investigation personnel and $4,436,819.12 to fire suppression personnel. *See Vela*, 276 F.3d at 664.

### (2) The City is entitled to offset of all payments made under earlier awards and settlements in the Akeroyd and Aldridge cases.

Plaintiffs have already conceded that the City is entitled to an offset for the earlier awards and settlements in the cases styled *Michael D. Akeroyd, et al. v. City of Houston*, Cause No. 85-66400, in the 234th Judicial District Court of Harris County, Texas (Brister, J.) (final judgment entered on February 5, 1991 attached as Exhibit 5); and *Donald Aldridge, et al. v. City of Houston*, Cause No. 86-13617, in the 234th Judicial District Court of Harris County, Texas (Brister, J.) (final judgment entered on November 12, 1991 attached as Exhibit 6). *Akeroyd* included some 243 plaintiffs, while *Aldridge* included some 167 plaintiffs.

Thus, with regard to those Plaintiffs who were also plaintiffs in *Akeroyd* or *Aldridge*, the City asks the Court to enter an order that gives the City an offset for all amounts awarded in those judgments.

---

[9] This request is very insidious because the Vela Plaintiffs are trying to take advantage of the waiver of limitations that the Fifth Circuit found for the Daley Plaintiffs. Thus, after the Vela Plaintiffs finally settled their FLSA overtime claims, they want this Court to recalculate all of their overtime hours dating back to 1986, without regard to their prior settlement or the monies paid in settlement.

**H.    The Claims Of Newly Added Plaintiffs Are Barred By Limitations.**

Finally, in the latest complaint (Amended Complaint dated October 10, 2002; Docket Entry 213), the Plaintiffs seek to add 22 new plaintiffs that were never plaintiffs in this case before this Court. The new plaintiffs are Kurt C. Adams, Shane Blake, Edward E. Brashier, Michael G. Conn, Chris Crowley, Michael E. Cruz, Davis L. Graham, Jeffery D. Grissom, Dwayne Gutowsky, Trevine Hines, Dexter W. Johnson, Darrell Gene Kosik, Harry J. Kubecza, Jr., Chris Lyons, Randy G. McAdams, Ronald Mlcak, Reginald H. Moore, Kevin Okonski, Jody S. Primrose, Steven T. Ross, Wesley Warnke, and John P. Zavala.

These plaintiffs never appeared before this Court. The live pleading filed on behalf of the Vela Plaintiffs was the Plaintiffs' Fifth Amended Petition, which was filed in state court and was the basis for the removal of this case on October 7, 1997 (*see* Docket Entry 1)(the petition is attached to this motion for summary judgment at Exhibit 7). The 22 new plaintiffs were not included in that petition, nor in any of the subsequent pleadings filed in this Court.

Final judgment was entered on July 7, 2000. *See* Docket Entry 151. None of the 22 new plaintiffs had made any effort to intervene in this case prior to final judgment.

The Vela Plaintiffs filed a notice of appeal to the Fifth Circuit. *See* Docket Entry 155. None of the 22 newly added plaintiffs appeared on the notice of appeal. *Id.*

Thus, these newly added 22 plaintiffs first appear before this Court now, over five years since this case was first filed in this Court, over two years after this case was litigated to final judgment, and well after the case was appealed to the Fifth Circuit and remanded.

Because these plaintiffs waited too long to join this case—well after limitations has expired

on any FLSA claims they may have—their claims should be dismissed.

The newly added 22 plaintiffs may claim that because the Court held that the City

waived its limitation defense (Docket Entry 181), then anybody can join the lawsuit, even

after limitations has expired.  That would be an absurd position.  The fact that a defendant

may waive its defense with regard to one plaintiff does not mean that the defendant waives

its defense for all people—even those who were never parties to the lawsuit—for all time.

*Cf. Sparks v. Aetna Life and Cas. Co.*, 554 S.W.2d 228, 229 (Tex. Civ. App.—Dallas 1977,

no writ)("we hold that waiver by the insurer as to one insured does not waive its policy

defenses to another insured").  Moreover, since the claims of the newly added plaintiffs were

not even in existence, the City could not be held to waive defenses to the nonexistent claims.

*See Discovery Operating, Inc. v. Baskin*, 855 S.W.2d 884, 887 (Tex. App.—El Paso 1993,

no writ)("a party cannot waive a right that is no more than a hypothetical possibility").

The newly added 22 plaintiffs may also contend that their claims "relate back" to the

filing of the original complaint by the original plaintiffs under FED. R. CIV. P. 15(c)(3).  That

contention would also be without merit and would not avoid the City's limitation defense.

Rule 15(c)(3) expressly does not apply to the situation presented here: an attempt to

add a new plaintiff to assert a claim against an existing defendant.  *See* Rule 15, Advisory

Committee Notes to 1963 Amendment; *see also Olech v. Village of Willowbrook*, 138

F.Supp.2d 1036, 1042 (N.D. Ill. 2000).  However, Rule 15(c)(3) extends to this situation "by

analogy." *Id.*

Courts that have considered this very issue have concluded that the tardy plaintiff should not be able to avoid limitations under this rule. *See Morin v. Tripin*, 778 F.Supp. 711, 735 (S.D.N.Y. 1991)("Rule 15(c) does not exist merely to keep the door open for any tardy plaintiff of whom the defendant may be aware."). Two cases appear directly on point. *See Nelson v. County of Allegheny*, 60 F.3d 1010 (3d Cir. 1995); *Levy v. U.S. General Accounting Office*, 1998 WL 193191 (S.D.N.Y. 1998).

In *Nelson*, some anti-abortion protestors filed a §1983 action against the county and the city based on the government's action during a protest. *Nelson*, 60 F.3d at 1013. After the statute of limitations expired, some other anti-abortion protestors were added to the complaint. *Id.* Those newly added plaintiffs attempted to argue that they could avoid limitations because their claims related back to the claims filed by the original plaintiffs. *Id.* The court disagreed. The court held that the relation back doctrine "does not save the claims of complainants who have sat on their rights." *Id.* at 1015. The court noted that the newly added plaintiffs "seek to take advantage of the rule to perform an end-run around the statute of limitations that bars their claims." *Id.* The Third Circuit Court of Appeals affirmed the dismissal of the claims of the newly added plaintiffs.

Similarly, in *Levy*, the original plaintiff (Levy, of course) filed a timely suit for discrimination, while other plaintiffs did not. 1998 WL 193191, at *3. Levy sought to add those untimely plaintiffs to his complaint, and those plaintiffs, in an effort to avoid limitations, contended that their claims related back to Levy's original filing. *Id.* The court disagreed and held, "Clearly the relation back rule was not designed to provide a means to

circumvent or expand the limitations period." *Id*. at *6. The court dismissed the newly added plaintiffs. *Id*. at *7.

As in the above cases, there is no sound basis for the newly added plaintiffs to have waited all this time, through five years of litigation, huge dollar settlements, and a lengthy appeal, in order to file a claim for the first time. Because those plaintiffs have "sat on their rights," they cannot take advantage of the relation back rule to avoid limitations.[10]

Thus, these 22 newly added plaintiffs must face the bar of limitations. Here, it is undisputed that limitations bars their claims because: (1) The FLSA provides a two year statute of limitations, *see* 29 U.S.C § 255; and (2) the newly added plaintiffs (like the original plaintiffs) seek overtime compensation from 1986 to 1999, a time period now barred by the FLSA limitations period. Further, it is undisputed that the newly added plaintiffs cannot seek recovery for any overtime damages after 1999 because, in that year, the FLSA was amended to reclassify paramedics and EMTs as fire fighters. *See* 29 C.F.R. § 203 (December 9, 1999)(amendment, PL 106-151, 1999 H.R. 1693).

Thus, as to the 22 newly added plaintiffs, this Court should enter summary judgment against them based on the expiration of the statute of limitations.

## CONCLUSION

The City's motion for summary judgment should be granted.

---

[10] The failure of these newly added plaintiffs to file their claims cannot be considered a mere "mistake." All of the plaintiffs were surely aware of this case, and some of the newly added plaintiffs were even witnesses. *See* Docket Entry 120, at PX 8, at page 9 (testimony of Senior Captain Wes Warnke).

Respectfully Submitted,

THE CITY OF HOUSTON, TEXAS

Constance K. Acosta
Sr. Assistant City Attorney
Bar No. 00835650
Federal ID # 1539
Judy K. Hatfield
Sr. Assistant City Attorney
Bar No. 09224300
Federal ID # 18462
Bertrand L. Pourteau II
Sr. Assistant City Attorney
Chief, Business Litigation Division
Bar No. 16190300
Federal I.D. # 6553
P. O. Box 1562
Houston, Texas 77251
Telephone (713)247-1479
Facsimile  (713)247-1017


HOLMAN & KEELING, P.C.


_David W. Holman_ (signature)

David W. Holman
TBN: 09902500
Lyric Centre
440 Louisiana, Suite 2220
Houston, Texas 77002
Telephone (713)223-2220
Facsimile  (713)223-2224

## Certificate Of Service

I hereby certify that on November 14, 2002, the foregoing document was forwarded to the following via the indicated manner:

VIA HAND DELIVERY

Mr. E. Troy Blakeney
E. TROY BLAKENEY, JR. P.C.
1330 Post Oak Boulevard
Suite 2995
Houston, Texas 777056
Telephone (713)222-9115   Facsimile (713)222-9114

Mr. Roger Townsend
Mr. J. Brett Busby
HOGAN, DUBOSE & TOWNSEND, L.L.P.
Bank of America Center
700 Louisiana, Suite 4200
Houston, Texas 77002
Telephone (713)222-8800   Facsimile (713)222-8810

Mr. Vincent L. Marable III
PAUL WEBB, P.C.
221 N. Houston Street
Wharton, Texas 77488
Telephone (979)532-5331   Facsimile (979)532-2902
*Attorneys for Plaintiffs*

David W. Holman

## INDEX TO EXHIBITS

| Exhibit No. | Description |
| --- | --- |
| 1 | Judgment — *Vela v. City of Houston*, 276 F.3d 659, 683 (5th Cir. 2001) |
| 2 | Vela Plaintiffs' Reply in Support of Motion to Dismiss As Moot Portions of the City of Houston's Appeal Due to Settlement |
| 3 | Vela Plaintiffs' Corrected Brief for Cross-Appellees Philip E. Daley, et al. and Reply Brief for Appellants Philip E. Daley, et al. |
| 4 | Transcript of July 10, 2000 hearing |
| 5 | Final Judgment entered on February 5, 1991 in *Michael D. Akeroyd, et al. v. City of Houston*, Cause No. 85-66400, in the 234th Judicial District Court of Harris County, Texas (Brister, J.) |
| 6 | Final Judgment entered on November 12, 1991 in *Donald Aldridge, et al. v. City of Houston*, Cause No. 86-13617, in the 234th Judicial District Court of Harris County, Texas (Brister, J.) |
| 7 | Vela Plaintiffs' Fifth Amended Petition |

276 F.3d 659                                                                                    **Page 1**
145 Lab.Cas. P 34,422, 7 Wage & Hour Cas.2d (BNA) 930
**(Cite as: 276 F.3d 659)**

C

United States Court of Appeals,
Fifth Circuit.

Juan E. VELA;  et al., Plaintiffs,
Phillip E. Daley;  Tiera Angelle Leger;  Richard
Wayne Medeiros;  Clint
Hendrix, Plaintiffs-Appellants-Cross-Appellees,
and
Calvin Thames, et al., Intervenor Plaintiffs,
Calvin Thames, et al., Intervenor Plaintiffs-
Appellants-Cross-Appellees,
v.
The CITY OF HOUSTON, Defendant-Appellee-
Cross-Appellant.
Philip E. Daley;  Tiera Angelle Leger;  Richard
Wayne Medeiros;  Clint Hendrix,
Plaintiffs-Appellants-Cross-Appellees,
v.
City of Houston, Defendant-Appellee-Cross-
Appellant.

No. 00-20770.

Dec. 14, 2001.

Fire department employees, including fire
suppression, telemetry, dispatch, arson investigation,
and emergency medical service (EMS) employees,
brought state court action against city seeking
overtime pay under Fair Labor Standards Act (FLSA)
and state law. City removed action to federal court.
The United States District Court for the Southern
District of Texas, Lynn N. Hughes, J., entered partial
summary judgment in favor of all plaintiffs, and
subsequently entered agreed partial summary
judgment awarding unpaid overtime to all plaintiffs
except EMS employees. EMS employees brought
separate action claiming they were not fire protection
employees for purposes of FLSA. Actions were
consolidated. The District Court entered partial
summary judgment for city, finding that EMS
employees were fire protection employees. EMS
employees and city appealed. The Court of Appeals,
King, Chief Judge, held that: (1) Department of
Labor's (DOL) two-part test is the appropriate test for
determining whether EMS workers from any public
agency are exempt from FLSA's overtime provisions;
(2) EMS employees did not fall within FLSA
overtime exemption for public agency employees
engaged in fire protection activities; (3) statute
defining "employee in fire protection activities" did
not apply retroactively to bar EMS employees'

claims;  (4) EMS employees did not fall within
learned professional exemption; (5) EMS employees
holding rank of captain or higher did not fall within
executive/administrative exemption; and (6) District
Court did not abuse its discretion in awarding
$2,800,000 in attorney fees.

Affirmed in part;  reversed and remanded in part.

West Headnotes

[1] Labor Relations ☞1129.1
232Ak1129.1

State and local government employers do not enjoy
constitutional immunity from the FLSA's
requirements. Fair Labor Standards Act of 1938, § 1
et seq., 29 U.S.C.A. § 201 et seq.

[2] Labor Relations ☞1191
232Ak1191

Employees are entitled to overtime compensation
according to the general rule of the FLSA unless their
employer proves that one of the many exemptions
applies. Fair Labor Standards Act of 1938, § 7(a)(1),
29 U.S.C.A. § 207(a)(1).

[3] Labor Relations ☞1192
232Ak1192

Exemptions from the FLSA are construed narrowly.
Fair Labor Standards Act of 1938, § 1 et seq., 29
U.S.C.A. § 201 et seq.

[4] Labor Relations ☞1516
232Ak1516

The employer has the burden to prove that the
employee is exempt from the FLSA general rule
requiring overtime compensation. Fair Labor
Standards Act of 1938, § 7(a)(1), 29 U.S.C.A. §
207(a)(1).

[5] Labor Relations ☞1425
232Ak1425

The Department of Labor (DOL) regulations under
the FLSA constitute a body of experience and
informed judgment to which courts may properly
resort for guidance. Fair Labor Standards Act of
1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

276 F.3d 659
(Cite as: 276 F.3d 659)

[6] Labor Relations ☞1451.1
232Ak1451.1

The Court of Appeals must defer to Department of Labor (DOL) regulations promulgated under the FLSA if they are based on a permissible construction of the statute. Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.

[7] Labor Relations ☞1451.1
232Ak1451.1

The Court of Appeals must defer to the Department of Labor's (DOL) interpretation of its FLSA regulations unless the interpretation is plainly erroneous or inconsistent with the regulation. Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.

[8] Labor Relations ☞1131
232Ak1131

The Department of Labor's (DOL) two-part test, for determining whether ambulance and rescue service employees of public agency other than fire protection or law enforcement agency may be treated as employees engaged in fire protection or law enforcement activities, is the appropriate test for determining whether emergency medical service (EMS) workers from any public agency are exempt from the FLSA's overtime provisions, outside possible application of four-part DOL regulation defining "employee * * * in fire protection activities." Fair Labor Standards Act of 1938, § 7(k), 29 U.S.C.A. § 207(k); 29 C.F.R. §§ 553.210(a), 553.215 (2000).

[9] Labor Relations ☞1131
232Ak1131

City emergency medical service (EMS) employees were not "regularly dispatched to fires, crime scenes, riots, natural disasters and accidents," and thus did not fall within FLSA overtime exemption for public agency employees engaged in fire protection activities, where only 17% of EMS dispatches were related to fires, crimes, riots, natural disasters, and car accidents, and the other 83% were related to solely medical or health-related incidents. Fair Labor Standards Act of 1938, § 7(k), 29 U.S.C.A. § 207(k); 29 C.F.R. § 553.215 (2000).

[10] Labor Relations ☞1249
232Ak1249

Analysis of regularity, for purposes of determining whether emergency medical service (EMS) public employees are exempt from the FLSA's overtime provisions, should be guided by three factors: (1) the percentage of total calls that are dispatches to fires, crimes, riots, natural disasters, and car accidents; (2) the percentage of EMS man-hours spent responding to such dispatches; and (3) the percentage of the total number of all calls involving such emergencies to which the EMS is dispatched. Fair Labor Standards Act of 1938, § 7(k), 29 U.S.C.A. § 207(k); 29 C.F.R. § 553.215 (2000).

[11] Labor Relations ☞1249
232Ak1249

It is preferable to have evidence under all three factors that are applied in analyzing regularity, for purposes of determining whether emergency medical service (EMS) public employees are exempt from the FLSA's overtime provisions; however, such evidence is not required in every case. Fair Labor Standards Act of 1938, § 7(k), 29 U.S.C.A. § 207(k); 29 C.F.R. § 553.215 (2000).

[12] Labor Relations ☞1191
232Ak1191

Statute defining "employee in fire protection activities" did not apply retroactively to bar FLSA claims of city emergency medical services (EMS) employees; neither language nor legislative history of statute expressly stated that Congress intended statute to apply retroactively, and retroactive application would broaden FLSA exemption for public agency employees engaged in fire protection activities, and thus would impair EMS employees' rights. Fair Labor Standards Act of 1938, §§ 3(y), 7(k), 29 U.S.C.A. §§ 203(y), 207(k).

[13] Statutes ☞263
361k263

Generally, the Court of Appeals disfavors the retroactive application of new laws.

[14] Statutes ☞267(1)
361k267(1)

Although in many situations a court should apply the law in effect at the time it renders its decision, those situations generally involve procedural changes to existing law, including statutes which merely alter

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

276 F.3d 659                                                                                    Page 3
(Cite as: 276 F.3d 659)

jurisdiction.

[15] Statutes ⚖═262
361k262

[15] Statutes ⚖═265
361k265

[15] Statutes ⚖═266
361k266

In determining whether a new statute should be applied retroactively, the Court of Appeals first asks whether Congress has expressly prescribed the statute's proper reach, and then asks whether the statute would impair rights a party possessed when the party acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.

[16] Labor Relations ⚖═1206
232Ak1206

City emergency medical service (EMS) employees did not fall within learned professional exemption to FLSA's overtime requirement, where city did not require EMS employees to have college degree, and, although employees used small amount of discretion, they followed standing orders or protocols at all times. Fair Labor Standards Act of 1938, § 13(a)(1), 29 U.S.C.A. § 213(a)(1); 29 C.F.R. § 541.3 (2000).

[17] Labor Relations ⚖═1249
232Ak1249

City emergency medical service (EMS) employees holding rank of captain or higher did not fall within executive/administrative exemption to FLSA's overtime requirement, where city failed to present any evidence of actual job functions of such employees. Fair Labor Standards Act of 1938, § 13(a)(1), 29 U.S.C.A. § 213(a)(1); 29 C.F.R. § 541.1(f) (2000).

[18] Labor Relations ⚖═1194.1
232Ak1194.1

Among the factors to be considered in determining whether an employee falls within the executive/administrative exemption to the FLSA's overtime requirement are: (1) the relative importance of the managerial duties as compared with other types of duties; (2) the frequency with which the employee exercises discretionary powers; (3) the employee's relative freedom from supervision; and (4) the

relationship between the employee's salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. Fair Labor Standards Act of 1938, § 13(a)(1), 29 U.S.C.A. § 213(a)(1); 29 C.F.R. § 541.1(f).

[19] Federal Courts ⚖═611
170Bk611

Generally, on appeal, the Court of Appeals does not address issues that were not raised in the lower court.

[20] Federal Courts ⚖═617
170Bk617

Court of Appeals would not consider city's statute of limitations defense to FLSA claim, where city weakly asserted possible limitations defense in its original answer, but never re-asserted such defense when confronted with motion for summary judgment, and failed to mention such defense in its supplemental answer. Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.; Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

[21] Labor Relations ⚖═1571
232Ak1571

District court did not abuse its discretion in awarding $2,800,000 in attorney fees to attorney for city employees on their Texas law claims for overtime compensation, where court separately considered each *Arthur Andersen* factor, city attorney had emphasized complexity of litigation in requesting funding from city, and fee estimate by employees' attorney that was approximately $100 higher than fee paid by city to its attorneys was justified given risk of receiving no fee at all.

[22] Federal Courts ⚖═830
170Bk830

[22] Federal Courts ⚖═878
170Bk878

The Court of Appeals reviews the district court's award of attorney fees for abuse of discretion and its findings of fact supporting the award for clear error.

[23] Costs ⚖═194.18
102k194.18

Under Texas law, a court determining the reasonableness of an attorney fees award should

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

consider the eight factors set forth in *Arthur Andersen & Co. v. Perry Equip. Corp.*

[24] Labor Relations ☞1569.1
232Ak1569.1

In action for overtime compensation under Texas law, finding that employees' total recovery included pension contributions made by city to their individual pension accounts, for purposes of determining award of attorney fees, was not clearly erroneous.

[25] Federal Civil Procedure ☞2737.4
170Ak2737.4

Paralegal work can only be recovered as attorney fees if the work is legal rather than clerical.

[26] Labor Relations ☞1567
232Ak1567

District court did not clearly err in finding that numerous hours of paralegal work cited by plaintiffs' attorneys in Texas law action for overtime pay were legal in nature and recoverable as attorney fees.

[27] Federal Courts ☞878
170Bk878

The Court of Appeals must accept the factual findings upon which the district court bases its award of attorney fees, including the determination of the number of hours reasonably expended on the litigation, unless they are clearly erroneous.

[28] Labor Relations ☞1569.1
232Ak1569.1

District court's decision not to adopt facts from expert report on attorney fees submitted by plaintiffs in action for overtime compensation under Texas law did not make court's findings clearly erroneous.

[29] Federal Courts ☞724
170Bk724

City and fire suppression employees settled issues concerning damages to be awarded to employees for overtime compensation under Texas law, and Court of Appeals thus lacked jurisdiction over such issues, even though record contained no final judgment ordering city to pay overtime to such employees, where city had paid employees overdue wages pursuant to city council motion referring to

"settlement," and district court entered Agreed Partial Summary Judgment, signed by parties, stating that claims would be dismissed upon payment of "agreed upon sum."

[30] Federal Courts ☞723.1
170Bk723.1

The Court of Appeals' duty is limited to making decisions on actual controversies.

[31] Federal Courts ☞723.1
170Bk723.1

The Court of Appeals has no power to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.

[32] Federal Courts ☞12.1
170Bk12.1

Generally, settlement of a dispute renders moot any case growing out of that dispute.

[33] Federal Courts ☞723.1
170Bk723.1

When a dispute has been settled, the Court of Appeals finds moot any claims growing out of that dispute, even if the parties remain at odds over the particular issue they are litigating.

*663 Vincent Lee Marable, III (argued), Paul Webb, Wharton, TX, E. Troy Blakeney, Jr., Houston, TX, for Daley, Leger, Medeiros, Hendrix and Thames.

John E. Fisher, Sr. Asst. City Atty. (argued), Legal Dept., Carole Snyder (argued), Houston, TX, for City of Houston.

Appeals from the United States District Court for the Southern District of Texas.

Before KING, Chief Judge, BARKSDALE, Circuit Judge, and NOWLIN, District Judge. [FN*]

FN* District Judge of the Western District of Texas, sitting by designation.

KING, Chief Judge:

In district court, Plaintiffs-Appellants asserted claims against Defendant-Appellee, the City of Houston, for overtime compensation pursuant to the Fair Labor

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Standards Act, and they now appeal from the district court's grant of summary judgment in favor of the City. The City cross-appeals from, among other things, the district court's award of attorney's fees in a related case that was consolidated with this case. For the following reasons, we REVERSE the district court's grant of summary judgment in favor of the City and REMAND for entry of judgment in favor of Plaintiffs-Appellants following a determination of the amount of overtime compensation owed by the City to Plaintiffs-Appellants. Further, we AFFIRM the district court's award of attorney's fees in the related case.

*I. Factual and Procedural History*

Plaintiffs-Appellants (the "Daley Plaintiffs") are paramedics and emergency medical technicians ("EMTs") (collectively the "EMS workers" or "EMS employees") employed by the City of Houston Fire Department. The Daley Plaintiffs are a subset of a group of approximately 2,600 fire department employees consisting of fire suppression, [FN1] telemetry, dispatch, and arson *664 investigation personnel (the "Vela Plaintiffs"). The Vela Plaintiffs filed suit against the City of Houston (the "City") in state court on October 25, 1995 claiming they were entitled to overtime pay under state law and under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.* (1998). On October 17, 1997, the City removed the suit to the United States District Court for the Southern District of Texas. The district court entered partial summary judgment in favor of the Vela Plaintiffs on September 24, 1998. The district court did not award any specific amounts for unpaid overtime at that time, but an Agreed Partial Summary Judgment, entered on May 28, 1999, awarded $5,489,590.62 to the telemetry, dispatch, and arson investigation personnel--i.e., all the Vela Plaintiffs except the fire suppression personnel. The fire suppression personnel (including the Daley Plaintiffs) were later paid $4,436,819.12 as a "settlement." [FN2]

FN1. The paramedics and EMTs (including the Daley Plaintiffs) were classified as fire suppression personnel in the Vela suit.

FN2. The City denies that there was a settlement but concedes that payment was made.

On April 5, 1999, the Daley Plaintiffs filed a separate suit in the district court claiming they were

not fire protection employees for purposes of the FLSA. On August 5, 1999, this suit was consolidated with the prior suit brought by the Vela Plaintiffs. The parties completed discovery with respect to the claims raised by the Daley Plaintiffs on November 30, 1999. The City and the Daley Plaintiffs then filed cross-summary judgment motions. In their summary judgment motion, the Daley Plaintiffs argued that as non-fire protection personnel, they are subject to the standard forty-hour workweek under § 207(a)(1) of the FLSA, [FN3] and thus entitled to overtime compensation in addition to that awarded the Vela Plaintiffs under state law. [FN4] The City countered in its summary judgment motion that, pursuant to § 207(k) of the FLSA, [FN5] the Daley Plaintiffs are exempt from overtime compensation under the FLSA until they exceed an average *665 of fifty-three hours of work in a week. *See* 29 C.F.R. § 553.201(a). [FN6] Alternatively, the City argued that the Daley Plaintiffs are exempt from the general rule providing overtime compensation for hours worked in excess of the standard forty-hour workweek under either the Learned Professional exemption [FN7] or the Executive/Administrative exemption. [FN8]

FN3. Section 207(a)(1) of the FLSA states: Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
29 U.S.C. § 207(a)(1).

FN4. Under state law, as fire suppression personnel, the Daley Plaintiffs were eligible for overtime only after working in excess of 46.7 hours in a workweek. *See* Tex. Local Gov't Code Ann. § 142.0017(b) (Supp.1999).

FN5. Section 207(k) states: No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities ... if--
(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in a work period of 28 consecutive days in calendar year 1975; or

(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or, if lower, the number of hours referred to in clause (b) of paragraph (1)) bears to 28 days,

compensation at a rate not less than one and one-half times the regular rate at which he is employed.

FN6. A Department of Labor regulation states:
Section 7(k) of the [FLSA] provides a partial overtime pay exemption for fire protection ... personnel ... who are employed by public agencies on a work period basis. This section of the [FLSA] formerly permitted public agencies to pay overtime compensation to such employees in work periods of 28 consecutive days only after 216 hours of work.... [T]he 216-hour standard has been replaced, pursuant to the study mandated by the statute, by 212 hours for fire protection employees.... In the case of such employees who have a work period of at least 7 but less that 28 consecutive days, overtime compensation is required when the ratio of the number of hours worked to the number of days in the work period exceeds the ratio of 212 ... hours to 28 days.
29 C.F.R. § 553.201(a). In conjunction with § 207(k) of the FLSA, this regulation establishes that fire protection employees are exempt from overtime compensation under the FLSA until they exceed an average of fifty- three hours of work in a week.

FN7. The FLSA provides that any employee "employed in a bona fide ... professional capacity" is exempt from the general rule requiring overtime compensation. 29 U.S.C. § 213(a)(1) (1998) (the "Learned Professional exemption").

FN8. The FLSA provides that any employee "employed in a bona fide executive [or] administrative ... capacity" is exempt from the general rule requiring overtime compensation. 29 U.S.C. § 213(a)(1) (the "Executive/Administrative exemption").

What the City has not argued bears mention. Although the City contests whether there was in fact a settlement with the Vela Plaintiffs, *see infra* Part V, conspicuously absent from the City's arguments in the district court and on appeal is an alternative argument that the amount paid by the City to the Vela Plaintiffs was intended to settle the Daley Plaintiffs' claim for overtime compensation under the FLSA. In response to a specific question at oral argument about the res judicata effect of any settlement on the Daley Plaintiffs' FLSA claim, the City acknowledged that any such argument had been waived.

The district court entered partial summary judgment in favor of the City on March 22, 2000, finding that the Daley Plaintiffs are fire protection employees under the FLSA and therefore not eligible for additional overtime under § 207(a)(1). Although the parties' motions for summary judgment address the Learned Professional and Executive/Administrative exemptions, the district court's opinion was not required to, and did not, decide whether the Daley Plaintiffs fall within those exemptions. In this appeal, the Daley Plaintiffs request that this court vacate the district court's order granting summary judgment in favor of the City and render judgment in favor of the Daley Plaintiffs. The City cross-appeals from the district court's award of attorney's fees to the Vela Plaintiffs. In addition, the City cross-appeals three issues from the Vela Plaintiffs' case: (1) the district court's order directing the City to pay damages for wages between January 1, 1997 and May 28, 1997 to the fire suppression personnel; (2) the district court's conclusion that overtime for the fire suppression personnel should be calculated on an eighty-hour work cycle; and (3) the district court's conclusion that the City improperly worked dispatch and arson personnel on an eight-day work cycle.

*666 *II. Summary Judgment Standard of Review*

We review a grant of summary judgment de novo, applying the same standard as the district court. *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.,* 179 F.3d 164, 167 (5th Cir.1999). Summary judgment is proper when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). While we view the evidence in a light most favorable to the non-movant, *see Coleman*

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

*v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir.1997), in order to avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the evidence is such that a reasonable jury could return a verdict for the non-movant, there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, if the non-movant fails to present facts sufficient to support an essential element of his claim, summary judgment is appropriate. *See Celotex,* 477 U.S. at 322-23, 106 S.Ct. 2548.

### III. The Daley Plaintiffs' Claims for Overtime Compensation
### A. The General Rule of the FLSA and its Exemptions

[1][2][3][4] The FLSA establishes the general rule that all employees must receive overtime compensation for hours worked in excess of forty hours during a seven-day workweek. [FN9] *See* 29 U.S.C. § 207(a)(1). [FN10] Employees are entitled to overtime compensation according to the general rule unless their employer proves that one of the many exemptions applies. The City asserts that, as EMS workers, the Daley Plaintiffs are not entitled to overtime compensation under the general rule because they fall within three exemptions. First, employees of a public agency that are engaged in fire protection activities are exempt from the general rule (the " § 207(k) exemption"). 29 U.S.C. § 207(k). [FN11] To receive overtime compensation under the FLSA, fire protection employees must work more than 212 hours during a work period of 28 consecutive days, equivalent to an average of 53 hours per week. *See* 29 U.S.C. § 207(k); 29 C.F.R. § 553.201(a). [FN12] As part of its argument that the Daley Plaintiffs fall within the § 207(k) exemption, the City asserts that § 203(y), a recently enacted statute that defines "employee in fire protection activities," applies retroactively to bar the Daley Plaintiffs' claims. *See* 29 U.S.C. § 203(y) (Supp.2001). The second and third exemptions that the City relies on are the Learned Professional exemption and the Executive/Administrative exemption. We construe exemptions from the FLSA narrowly, *see Blackmon v. Brookshire Grocery Co.,* 835 F.2d 1135, 1137 (5th Cir.1988), and the employer has the burden to prove that the employee is exempt from the FLSA general rule, *see Heidtman v. *667 County of El Paso,* 171 F.3d 1038, 1042 (5th

Cir.1999).

FN9. State and local government employers do not enjoy constitutional immunity from the FLSA's requirements. *See Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). *Garcia* overruled *Nat'l League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), a case which held that Congress lacked authority to impose the requirements of the FLSA on state and local governments.

FN10. *See supra* note 3 for the text of 29 U.S.C. § 207(a)(1).

FN11. *See supra* note 5 for the text of 29 U.S.C. § 207(k).

FN12. *See supra* note 6 for the text of 29 C.F.R. § 553.201(a).

In this part of the opinion, we look first to the question whether the Daley Plaintiffs fall within the § 207(k) exemption as it existed at the time their claims accrued. We then turn to the question whether § 203(y) is retroactive. Next, we determine whether the Daley Plaintiffs fall within the Learned Professional and Executive/Administrative exemptions. Finally, we address the City's statute of limitations defense.

### B. Do the Daley Plaintiffs Fall Within the § 207(k) Exemption?

The Daley Plaintiffs are employed by the City of Houston Fire Department and undergo training with firefighters. In fact, some of the Daley Plaintiffs occasionally work as firefighters. As EMS workers, however, they spend approximately 83% of their time responding to what are purely medical calls, unassociated with any firefighting or law enforcement activity. The City's EMS employees are called to respond to less than 1% of the City's fires. Nevertheless, the City argues that the Daley Plaintiffs are exempt from the FLSA general rule providing overtime compensation for hours worked in excess of the standard forty-hour workweek because they are "employee[s] in fire protection activities" under the § 207(k) exemption. The Daley Plaintiffs counter that they do not fall within the § 207(k) exemption because they do not satisfy the requirements for that exemption set out in the related Department of Labor ("DOL") regulations. The district court granted

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

summary judgment to the City and found that the Daley Plaintiffs fall within the § 207(k) exemption and are therefore not entitled to overtime compensation for hours worked in excess of the standard forty-hour workweek established by the FLSA.

[5][6] We must decide whether the § 207(k) exemption covers the City's EMS employees. To help in our determination, we turn to the DOL regulations under the FLSA because they "constitute a body of experience and informed judgment to which courts ... may properly resort for guidance." *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). This court must defer to these DOL regulations if (as all parties implicitly concede) they are "based on a permissible construction of the statute." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

### C. The DOL Regulations

[7] In 1987, the DOL issued regulations concerning the application of the FLSA to public employees, *see* 29 C.F.R. Part 553, and devoted a subpart to "Fire Protection and Law Enforcement Employees of Public Agencies" and the nature of the § 207(k) exemption, *id.* at Subpart C. The DOL regulations begin by defining "employee ... in fire protection activities" as:

> any employee (1) who is employed by an organized fire department or fire protection district; (2) who has been trained to the extent required by State statute or local ordinance; (3) who has the legal authority and responsibility to engage in the prevention, control or extinguishment of a fire of any type; and (4) who performs activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires, including such incidental non-firefighting functions as *668 or of their particular specialty or job title (e.g., firefighter, engineer, hose or ladder operator, fire specialist, fire inspector, lieutenant, captain, inspector, fire marshal, battalion chief, deputy chief, or chief), and regardless of their assignment to support activities of the type described in paragraph (c) of

this section, whether or not such assignment is for training or familiarization purposes, or for reasons of illness, injury or infirmity. The term would also include rescue and ambulance service personnel if such personnel form an integral part of the public agency's fire protection activities. See § 553.215.

29 C.F.R. § 553.210(a). The first part of this regulation is commonly referred to as the § 553.210(a) four-part test. [FN13] The last full sentence of this regulation exempts EMS workers who form an "integral part" of an agency's fire protection activities (the "integral part" test). This sentence is followed by an explicit cross-reference to § 553.215 of the regulations. According to § 553.215:

> FN13. On its face, at least, the four-part test applies to standard firefighters rather than EMS workers. *See Justice v. Metro. Gov't of Nashville,* 4 F.3d 1387, 1394 (6th Cir.1993) (noting that the § 553.210(a) four-part test "describe[s] the standard firefighter and do[es] not apply to rescue and ambulance service personnel at all") . A recent DOL letter opinion, however, suggests that certain EMS workers are subject to the § 553.210(a) four-part test as well as the § 553.215 two-part test:
>
> We have concluded that firefighters who are cross-trained as EMS employees qualify for exemption under [§ 207(k) ] as fire protection employees where they are principally engaged as firefighters meeting the four tests outlined in [§ 553.210(a) ] *and* where the EMS functions they perform meet the tests described in [§ 553.215] for ambulance and rescue employees.
>
> Wage & Hour Division, U.S. Department of Labor, Opinion Letter, Feb. 13, 1995 (emphasis added). We must defer to the DOL's interpretation of its FLSA regulations unless the interpretation is "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (citations omitted). However, because the § 553.215 two-part test determines the outcome of this case, and because the DOL's letter ruling requires exempt dual-function EMS/firefighters to satisfy both the § 553.210(a) four-part test and the § 553.215 two-part test, we need not decide whether the four-part test applies and must be satisfied here. The fact that the Daley Plaintiffs fail one prong of the § 553.215 two-part test *(see* discussion *infra* Part III(E)) is sufficient to establish that they do

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

not fall within the § 207(k) exemption.

Ambulance and rescue service employees of a public agency other than a fire protection or law enforcement agency may be treated as employees engaged in fire protection or law enforcement activities ... if their services are substantially related to firefighting or law enforcement activities in that (1) the ambulance and rescue service employees have received training in the rescue of fire, crime, and accident victims ..., and (2) the ambulance and rescue service employees are regularly dispatched to fires, crime scenes, riots, natural disasters and accidents.

29 C.F.R. § 553.215. This regulation is commonly referred to as the § 553.215 two-part test.

We address first the relationship between the last sentence of § 553.210(a), i.e., the "integral part" test, and the § 553.215 two-part test. For reasons discussed below, we find that the "integral part" standard of § 553.210 is best understood by looking to the two-part test of § 553.215. Next, we apply the two-part test of § 553.215 to the Daley Plaintiffs. Because we conclude that the Daley Plaintiffs fail the § 553.215 two-part test, we find that they do not fall within the § 207(k) exemption.

*669 D. The § 553.210(a) "Integral Part" Test Versus The § 553.215 Two-Part Test

The relationship between the last sentence of § 553.210(a), i.e., the "integral part" standard, and § 553.215 is a point of contention among circuit courts. One circuit holds that either the "integral part" test or the § 553.215 two-part test applies, depending on the employment status of the EMS employee. Other circuits insist that the two tests are indistinguishable or that the § 553.215 test is merely a definition of "integral part." The disagreement stems from the language at the beginning of § 553.215 stating that the section applies to "[a]mbulance and rescue service employees of a public agency other than a fire protection or law enforcement agency."

At first glance, the "integral part" standard appears to apply to employees of an "organized fire department or fire protection district," while the two-part test applies only to employees of a "public agency other than a fire protection ... agency." See 29 C.F.R. §§ 553.210(a) and 553.215. The Eleventh Circuit has adopted this reading of the regulations. See Falken v. Glynn County, 197 F.3d 1341, 1346-47 (11th Cir.1999) (noting the existence of two distinct

standards, one for employees of the fire department and the other for employees of an agency separate from the fire department). The Sixth, Seventh, and Eighth Circuits, however, view the two-part test of § 553.215 as the definition of the phrase "integral part" found in § 553.210(a). See Justice, 4 F.3d at 1395 (holding that " 'integral part' is best understood by looking to the two-part test announced in Section 553.215"); Alex v. City of Chicago, 29 F.3d 1235, 1241 (7th Cir.1994) (holding that § 553.215 states the "one test for the [§ 207(k) ] exempt status of publicly employed emergency medical personnel"); Lang v. City of Omaha, 186 F.3d 1035, 1037 n. 3 (8th Cir.1999) (holding that "section 553.215 can be applied to paramedics employed by fire departments").

We now adopt the interpretation of the Sixth, Seventh, and Eighth Circuits. We find that the "integral part" standard of § 553.210(a) is best understood by looking to the two-part test of § 553.215. We do so, in part, because we are guided by this court's opinion in Bond v. City of Jackson. 939 F.2d 285 (5th Cir.1991). Bond is the only Fifth Circuit case to address whether EMS workers fall within the § 207(k) exemption. In Bond, EMS employees of a city fire department sued the city of Jackson for incorrectly classifying them as employees engaged in fire protection activities within the meaning of the § 207(k) exemption. Because of the classification, the city of Jackson refused to compensate the EMS employees for overtime for all hours worked in excess of forty per week. Although the court's opinion in Bond did not explicitly discuss the issue, the court applied § 553.215 to determine whether EMS workers employed by a fire department fell within the § 207(k) exemption. 939 F.2d at 287-88. Because the EMS workers in Bond received the requisite training, spent most of their time responding to accidents, and co-responded with firefighters to 90% of the EMS calls, we found that the EMS workers satisfied the § 553.215 two-part test. Id. The court's analysis in Bond suggests that the "integral part" standard of § 553.210(a) is best understood by looking to the two-part test of § 553.215.

[8] The conclusion that the two-part test of § 553.215 is the appropriate test for EMS workers from any public agency gives meaning to the cross-reference to § 553.215 found in § 553.210(a) and thereby avoids rendering the cross-reference superfluous or meaningless. For these reasons, [FN14] we find that the regulations announce *670

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

only one test (outside of the possible application of the four-part test of § 553.210(a)) for determining the exempt status of publicly employed EMS workers: the two-part test of § 553.215. [FN15]

> FN14. Our conclusion finds some support in the scant legislative history of the § 207(k) exemption, consisting of one brief exchange on the floor of the House of Representatives, which suggests that Congress intended no distinction between personnel connected with a fire department and those connected with some other department. Representative Quie states that this exemption "is intended to cover those employees directly employed by a public agency who are engaged in rescue or ambulance activities which are substantially related to fire protection or law enforcement activities." 120 CONG. REC. 8598 (1974). This statement contains the "substantially related" language of § 553.215 and suggests that all EMS workers should be treated similarly under the § 207(k) exemption.

> FN15. We need not consider the application of the § 553.210(a) four-part test to these facts. *See supra* note 13.

### E. Application of the § 553.215 Two-Part Test

[9] We turn, then, to the application of the § 553.215 two-part test to the Daley Plaintiffs. Under § 553.215, in order to be exempt from the overtime compensation provisions of the FLSA, an EMS employee: (1) must have "received training in the rescue of fire, crime, and accident victims" and (2) must be "regularly dispatched to fires, crime scenes, riots, natural disasters and accidents." 29 C.F.R. § 553.215. We examine the second prong, the regularity prong, first and find that the Daley Plaintiffs are not "regularly dispatched" as required by § 553.215 and thus do not fall within the § 207(k) exemption.

The DOL states that "[t]here is no specific frequency of occurrence which establishes 'regularity'; it must be determined on the basis of the facts of each case." Wage & Hour Division, U.S. Department of Labor, Opinion Letter, Oct. 9, 1987 [hereinafter "DOL Op. Let., Oct. 9, 1987"]. This court has held that regularity is easily established when "the EMS ambulances co-respond with one or more other units from the fire department" in "over ninety percent of the EMS calls." *Bond,* 939 F.2d at 288. In fact, the plaintiffs in *Bond* testified that they spent most of

their time responding to accidents, a type of § 553.215 emergency. *Id.* While *Bond* provides a clear example of regularity required by the second prong of the § 553.215 test, no Fifth Circuit case establishes the minimum requirements necessary to satisfy that prong.

In *Roy v. County of Lexington,* 141 F.3d 533 (4th Cir.1998), the Fourth Circuit construed "regularity" to require only "some frequency." *Id.* at 541. The *Roy* court recognized that this flexible standard "provides only limited assistance to trial courts" but felt constrained by "the flexible approach set forth in the regulations." *Id.* That court suggested that regularity is best shown with "evidence that numerous EMS calls were dispatched to § 553.215 emergencies and (or) evidence that many fire or police dispatches include EMS teams." *Id.*

[10][11] The Eleventh Circuit takes a more rigorous approach and has established specific guidelines for the regularity analysis. According to Eleventh Circuit jurisprudence, when determining whether dispatches to § 553.215 emergencies, i.e. fires, crimes, riots, natural disasters, and car accidents, are regular, the court should consider three factors: (1) the percentage of total calls that are dispatches to § 553.215 emergencies, (2) the percentage of EMS man-hours spent responding to such dispatches, and (3) the percentage of the total number of all calls involving § 553.215 emergencies to which the EMS is dispatched (the "O'Neal factors"). *See O'Neal v. Barrow County Bd. of Comm'rs,* *671 980 F.2d 674, 679 (11th Cir.1993). We agree with the Eleventh Circuit that the regularity analysis should be guided by the three *O'Neal* factors. While evidence under all three *O'Neal* factors is preferable, it is not required in every case.

In this case, the Daley Plaintiffs present evidence regarding regularity through deposition testimony from Wes Warnke, Assistant Chief in charge of EMS, and William Barry, a District Chief in the EMS Division. This evidence shows that for the years 1996, 1997, and 1998, only 17% of EMS dispatches were related to § 553.215 emergencies. The other 83% of EMS dispatches corresponded to solely medical or health-related incidents. This evidence, called for by the first *O'Neal* factor, suggests that the Daley Plaintiffs are not regularly dispatched to § 553.215 emergencies.

Unfortunately, neither party produces the evidence suggested by the second and third *O'Neal* factors: the

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

percentage of EMS man-hours spent responding to dispatches to § 553.215 emergencies and the percentage of the total number of all calls involving § 553.215 emergencies to which the EMS is dispatched. The Daley Plaintiffs establish that ambulances were dispatched to less than 1% of all fire calls in 1995, 1996, and 1997. [FN16] This evidence is relevant to our regularity analysis but not as helpful as evidence establishing the percentage of *all* § 553.215 emergency calls responded to by the Daley Plaintiffs.

> FN16. According to Warnke's deposition testimony, multiple alarm fires are the only fire incidents to which EMS workers are regularly dispatched. Because multiple alarm fires are very rare relative to other fire incidents, ambulances were dispatched to less than 1% of all fire calls in 1995, 1996, and 1997.

The City attempts to establish regularity with evidence showing that from 1996 to 1999 EMS workers responded to 64,435 crime scenes (assaults, gunshot wounds, rapes, stab wounds, hangings, overdoses, and other incidents) and 101,060 accidents (motorcycle and motor vehicle incidents). Although this evidence constitutes one part of the calculation contemplated by the third *O'Neal* factor, we find it unhelpful in the absence of evidence of the total number of crime scenes and accidents. The number of EMS responses, standing alone, does not indicate regularity. As indicated by the third *O'Neal* factor, regularity is best demonstrated by showing the number of responses relative to the total number of incidents.

Although we lack the evidence suggested by the second and third *O'Neal* factors, we need not remand this case. The parties finished full discovery on these issues on November 30, 1999, and neither party argues that this case presents any genuine issue of material fact. Rather, each party asserts that it is entitled to judgment on this record as a matter of law. In circumstances such as these where the factual record is effectively conceded to be complete, remand is unnecessary. We find that the evidence presented under the first *O'Neal* factor, i.e., that only 17% of EMS dispatches were related to § 553.215 emergencies, is sufficient for us to determine on this record that the Daley Plaintiffs are not regularly dispatched to § 553.215 emergencies as a matter of law. [FN17]

> FN17. In situations involving cross-motions

for summary judgment and upon finding no genuine issues of material fact, this court regularly reverses grants of summary judgment and enters judgment for the opposite party. *See, e.g., Owsley v. San Antonio Indep. Sch. Dist.,* 187 F.3d 521 (5th Cir.1999) (concluding that athletic trainers are professionals and thus are exempt from the FLSA's overtime benefits requirements, reversing summary judgment in favor of the trainers, and rendering judgment in favor of their employer).

This conclusion is supported by other courts, which have found a lack of sufficient *672 regularity in circumstances of even greater regularity than presented by this case. For example, the Sixth Circuit found that regularity had not been established in a case brought by EMS workers employed by the city of Nashville. *Justice,* 4 F.3d at 1387. In *Justice,* the EMS workers transported 6,733 victims from accidents and responded to 120 fire calls, 1,650 crime scene calls, and 8,943 general medical illness calls between March 15, 1990 and December 31, 1990. *Id.* at 1398. Thus, 48.7% of all EMS calls were to § 553.215 emergencies. In view of these facts, the district court concluded that the EMS workers were regularly dispatched. *Id.* Nevertheless, the Sixth Circuit reversed the district court's decision and remanded for further consideration after concluding that "these facts are insufficient to resolve this [regularity] issue." *Id.*

In *Roy,* EMS workers brought an action against Lexington County for overtime compensation. 141 F.3d at 533. In that case, 25% of EMS calls were executed in conjunction with law enforcement services and 5% were executed in conjunction with fire protection services. *Id.* at 541. Thus, roughly 70% of EMS calls were purely medical and only 30% of all calls were to § 553.215 emergencies. *Id.* Confronted with these facts, the district court found a lack of regularity, and the Fourth Circuit affirmed this determination. *Id.* at 542. In the instant case, only 17% of all EMS calls were to § 553.215 emergencies during the relevant time period, a percentage much lower than that encountered in either *Justice* or *Roy.*

Because the § 553.215 two-part test requires that employees satisfy both prongs of the test in order to be exempt, and because we find that the Daley Plaintiffs fail to satisfy the regularity prong on this record as a matter of law, we need not consider whether the EMS workers "have received training in the rescue of fire, crime, and accident victims"

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

sufficient to satisfy the first prong of the test. The failure to satisfy the regularity prong ensures that the City's employees are not exempt under § 207(k) from the general overtime provisions of the FLSA. [FN18]

> FN18. Courts often consider 29 C.F.R. § 553.212 when resolving disputes concerning the § 207(k) exemption. According to § 553.212, even if an EMS worker satisfies the § 553.215 two-part test, he can still qualify for overtime compensation under the forty-hour standard if he spends more than 20% of his working time in nonexempt activities (the "80/20 Rule"). Several courts have awarded overtime compensation to EMS workers based on the 80/20 Rule. *See, e.g., West v. Anne Arundel County,* 137 F.3d 752, 761 (4th Cir.1998) (awarding overtime compensation to EMS workers who spent more than 20% of their time performing medical services); *O'Neal,* 980 F.2d at 681 (granting overtime compensation because the majority of the employees' working hours were spent in nonexempt work such as responding to calls unrelated to fire protection or law enforcement). Because we have already determined that the Daley Plaintiffs fail the § 553.215 two-part test, we need not decide if they spend more than 20% of their working time in nonexempt activities.

*F. The Retroactivity of § 203(y)*

[12] As part of its argument that the Daley Plaintiffs fall within the § 207(k) exemption, the City asserts that § 203(y), a recently enacted statute that defines "employee in fire protection activities," applies retroactively to bar the Daley Plaintiffs' claims. We disagree.

On December 9, 1999, Congress amended the FLSA by adding a definition of "employee in fire protection activities." Section 203(y) of the FLSA now states:

> "Employee in fire protection activities" means an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance *673 personnel, or hazardous materials worker, who--
> (1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and
> (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the

environment is at risk.

29 U.S.C. § 203(y) (Supp.2001). The Daley Plaintiffs' claims accrued before Congress enacted this definition. Thus, we must determine if this definition applies retroactively.

[13][14][15] Generally, we disfavor the retroactive application of new laws. *See U.S. Fid. & Guar. Co. v. McKeithen,* 226 F.3d 412, 418 (5th Cir.2000). Retroactive legislation can create "severe problems of unfairness because it can upset legitimate expectations and settled transactions." *Id.* Although in many situations a court should "apply the law in effect at the time it renders its decision," *Bradley v. Sch. Bd. of the City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), those situations "generally involve procedural changes to existing law, including statutes which merely alter jurisdiction." *Hartford Cas. Ins. Co. v. F.D.I.C.,* 21 F.3d 696, 700 (5th Cir.1994). This court follows the two-part analysis governing the retroactivity of new statutes delineated by the Supreme Court in *Landgraf v. USI Film·Prods.,* 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). *See, e.g., Graham v. Johnson,* 168 F.3d 762, 781-88 (5th Cir.1999); *United States v. Rocha,* 109 F.3d 225, 228-29 (5th Cir.1997).

First, we ask "whether Congress has expressly prescribed the statute's proper reach." *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483. The stated purpose of § 203(y) is to "clarify the overtime exemption for employees engaged in fire protection activities." Pub.L. No. 106-151, 113 Stat. 1731 (codified as amended at 29 U.S.C. § 203(y)) (the "Amendment"). The text of the Amendment does not mention retroactivity. Furthermore, the legislative history of § 203(y) does not suggest that it was intended to apply retroactively. *See* 145 CONG. REC. H11,499-02 (daily ed. Nov. 4, 1999); H.R.REP. NO. 106-1040, at 102 (2001); S.REP. NO. 107-11, at 18 (2001). Therefore, we find that Congress has not expressly made § 203(y) of the FLSA retroactive.

The City argues that a portion of the legislative history, consisting of a brief exchange on the floor of the House of Representatives, clearly shows that § 203(y) was enacted to specifically preclude such claims as the Daley Plaintiffs assert in this case. During congressional debates, Representative Boehner observed:

> Many State and local governments employ EMS personnel who receive training and work schedules and maintain levels of preparedness

which is very similar to that of firefighters. In the past, these types of employees fit within the 7(k) overtime exemption.

In recent years, however, some courts have narrowly interpreted the 7(k) exemption and held that emergency medical services personnel do not come within the exemption because the bulk of their time is spent engaged in nonfire protection activities. These lawsuits have resulted in State and local governments being liable for millions of dollars in back pay, attorneys' fees and court costs.

So there is a real need to modernize this area of the Fair Labor Standards Act and to clearly specify who can be considered a fire protection employee for purposes of the exemption.

145 CONG. REC. at *H11500 (statement of Rep. Boehner). The sponsor of the new *674 § 203(y), Representative Ehlich, further explained:

[F]rom its inception, the Fair Labor Standards Act has exempted fire protection employees from the traditional 40-hour workweek. Historically, any emergency responder paid by a fire department was considered to be a fire protection employee. However, recent court interpretations of Federal labor statutes have rendered this definition unclear. [Section 203(y) ] seeks to clarify the definition of a fire protection employee.

*Id.* (statement of Rep. Ehlich). Contrary to the City's assertions, nothing in those statements makes clear a congressional intent to impair rights that existed and accrued prior to the passage of § 203(y). The Supreme Court has explained that inferences of retroactivity like those made by the City are unreliable:

It will frequently be true ... that retroactive application of a new statute would vindicate its purpose more fully. That consideration, however, is not sufficient to rebut the presumption against retroactivity. Statutes are seldom crafted to pursue a single goal, and compromises necessary to their enactment may require adopting means other than those that would most effectively pursue the main goal. A legislator who supported a prospective statute might reasonably oppose retroactive application of the same statute.

*Landgraf,* 511 U.S. at 285-86, 114 S.Ct. 1483. Thus, neither the language nor the legislative history of § 203(y) expressly states that Congress intended it to apply retroactively.

According to *Landgraf,* next we ask whether §

203(y) "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." 511 U.S. at 280, 114 S.Ct. 1483. Unlike the pre-amendment statutory scheme, § 203(y) explicitly covers a broad class of employees, including paramedics, emergency medical technicians, rescue workers, and ambulance personnel. Moreover, § 203(y) dispenses with the rescue training and regularity requirements for exemption of EMS workers under the pre-amendment regulations. Thus, under the current FLSA, more employees fall within the § 207(k) exemption, and fewer employees are entitled to overtime compensation pursuant to the FLSA general rule. If applied retroactively, this broadening of the exemption would impair the Daley Plaintiffs' rights to overtime compensation that accrued before Congress enacted § 203(y). [FN19] Because (1) Congress did not expressly make § 203(y) retroactive, and (2) retroactive application of § 203(y) here would impair the rights of the Daley Plaintiffs, we refuse to give § 203(y) retroactive effect.

FN19. We need not determine whether the Daley Plaintiffs would be exempt fire protection employees under § 203(y). It is enough to note that the retroactive application of § 203(y) would impair the Daley Plaintiffs' rights by making it much more difficult for them to prevail.

### G. The Learned Professional Exemption

[16] In addition to the § 207(k) exemption, the City argues that the Daley Plaintiffs fall within the Learned Professional exemption. [FN20] The FLSA provides that any employee "employed in a bona fide ... *675 professional capacity" is exempt from the general rule requiring overtime compensation. 29 U.S.C. § 213(a)(1). DOL regulations define "employee employed in a bona fide ... professional capacity" as:

FN20. Although the district court did not decide whether the Daley Plaintiffs fall within either the Learned Professional exemption or the Executive/Administrative exemption, the parties' summary judgment motions raise the applicability of these exemptions. Because the parties have finished discovery, and the record on these issues is complete, we can decide the applicability of these two exemptions.

any employee:

(a) Whose primary duty consists of the performance of:

(1) Work requiring knowledge of an advance type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes, ... and

(b) Whose work requires the consistent exercise of discretion and judgment in its performance.

29 C.F.R. § 541.3. This definition consists of two prongs: the education prong and the discretion prong. If an employer proves that his employee satisfies both prongs, the employee is not entitled to overtime compensation because he falls within the Learned Professional exemption. The City fails to show that the Daley Plaintiffs satisfy either prong of this exemption.

First, the Daley Plaintiffs lack the educational background to satisfy the education prong of the Learned Professional exemption. DOL regulations note that "[t]he typical symbol of the [required] professional training and the best prima facie evidence of its possession is, of course, the appropriate academic degree." 29 C.F.R. § 541.301(e)(1). City regulations do not require a college degree to qualify as a paramedic or EMT. The Department requires EMTs to complete only 200 hours of didactic training, clinical experience, and field internship and requires paramedics to complete only 880 hours of specialized training in didactic courses, clinical experience, and field internship. The only court to directly address this issue held that requirements such as these were insufficient to meet the education prong. See Quirk v. Balt. County, 895 F.Supp. 773 (D.Md.1995). In Quirk, the court ruled that, unlike nurses who must complete three academic years of study in an accredited college plus a fourth year of professional course work in a school of medical technology, paramedics, the highest level EMT, did not have the necessary education to be "learned professionals" under the regulations because they were only required to achieve 600 hours of classroom and field training. Id. at 785.

Although no Fifth Circuit case analyzes whether these EMT/paramedic requirements satisfy the education prong of the Learned Professional exemption, we applied the exemption in Owsley v. San Antonio Indep. Sch. Dist., 187 F.3d 521 (5th Cir.1999). The court held that athletic trainers are

"learned professionals" exempt from the FLSA overtime compensation provisions. Id. at 527. The court found that the trainers satisfied the education prong because they were required to achieve, at a minimum, the following: (1) a bachelor's degree in any field; (2) 1800 hours apprenticeship over a three-year period; (3) completion of five 3-hour credit college courses in specific areas of study; and (4) a C.P.R. test. Id. at 524-25. The Owsley panel analogized the trainers' educational training and background to those of airline pilots who, while lacking the requirement of a college degree, are required to "complete a course of instruction to learn the regulations governing pilots, basic aerodynamic and flight principles, and numerous airplane operations." Id. at 525. The court cited nurses, accountants, and "actuarial computants," as other examples of "learned professionals." Id. In this case, the EMT/paramedic educational requirements are much less *676 rigorous than those required for athletic trainers. Moreover, the educational backgrounds of EMS workers are not as extensive as those of any of the professionals cited as examples by the panel in Owsley. For these reasons, we find that the Daley Plaintiffs do not satisfy the education prong of the Learned Professional exemption.

Second, the Daley Plaintiffs' jobs lack the consistent exercise of discretion and judgment required to satisfy the discretion prong of the Learned Professional exemption. In the context of discussing the discretion exercised by trainers, the Owsley panel noted that paramedics/EMTs did not exercise the same type of discretionary judgment as trainers "because paramedics work on a daily basis with their supervising physicians under the expectation of physician intervention immediately following emergency treatment." Owsley, 187 F.3d at 527.

In his affidavit, Dr. David Persse, current Director of Emergency Medical Services for the City of Houston, explains the scope of the Daley Plaintiffs' work. Department EMS workers follow either protocols or standing orders at all times. Standing orders apply only when communication with a supervising physician has not been established. According to Persse, these orders "strictly define the actions, techniques, or drug administration that may be implemented" by the EMS workers. Although an EMS employee uses some discretion when selecting which particular standing order to apply, he is not permitted to exercise discretion when acting under a particular standing order. [*] Protocols, on the other hand, are applicable when communication has been

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

established with a supervising physician so that the physician is providing on-line medical direction. These protocols allow for more discretion but require physician supervision to implement. The medical director, not the EMS workers, is responsible for establishing all protocols and standing orders. These "highly specific medical protocols" and the direct physician supervision of the EMS workers formed the basis for the distinction made by this court in *Owsley* when we held that athletic trainers exercised discretion while EMS workers did not. 187 F.3d at 527.

We find that, although the Daley Plaintiffs use a small amount of discretion in their jobs, this discretion is not sufficient to establish "the consistent exercise of discretion and judgment" required by the discretion prong of the Learned Professional exemption. Thus, the City failed to satisfy its burden of proof on either prong of this exemption. We find that the Daley Plaintiffs do not fall within the Learned Professional exemption as a matter of law.

*H. The Executive/Administrative Exemption*

[17][18] In addition to the § 207(k) exemption and the Learned Professional exemption, the City argues that the Daley Plaintiffs fall within the Executive/ Administrative exemption. The FLSA provides that any employee "employed in a bona fide executive [or] administrative ... capacity" is exempt from the general rule requiring overtime compensation. 29 U.S.C. § 213(a)(1). To qualify as a bona fide executive, the employee must satisfy the following requirements:

> (1) The employee is compensated on a salary basis at a rate of not less than $250 per week; and
> (2) The employee's primary duty consists of management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and
> (3) The employee's responsibilities include the customary and regular direction *677 of the work of at least two or more other employees.

29 C.F.R. § 541.1(f). Whether an employee's "primary duty consists of management" is a fact-sensitive inquiry, but "[i]n the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent of the employee's time." 29 C.F.R. § 541.103. Among other factors to be considered are: (1) the relative importance of the managerial duties as compared with other types of duties, (2) the frequency with which the

employee exercises discretionary powers, (3) the employee's relative freedom from supervision, and (4) the relationship between the employee's salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. *See Quirk,* 895 F.Supp. at 786 (citing *Shockley v. City of Newport News,* 997 F.2d 18, 25-26 (4th Cir.1993)).

To qualify as a bona fide administrative employee, the employee's primary duty must be the performance of office or non-manual work directly related to management policies or general business operations of his employer, including work requiring the exercise of discretion and independent judgment. *See* 29 C.F.R. § 541.2. According to DOL regulations, "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a).

The City argues that paramedics and EMTs who hold the rank of captain or higher (collectively the "Managers") are employed in a bona fide executive or administrative capacity. On this record, we disagree. The City presented *no* evidence of the actual job functions of the Managers. Instead, the City offered the job descriptions for the captain, senior captain, district chief, and deputy chief positions. Each description contains a disclaimer that states: "Any one position may not include all of the tasks listed, nor do the examples necessarily include all of the tasks performed." The City presents no affidavits, testimony, or other evidence concerning the actual management duties performed by employees in these three classifications or the time spent on such management duties. A generic job description tells us nothing about the specific duties of each Manager or what percentage of time was spent on management activities. Furthermore, a job description does not indicate whether each Manager exercised discretion and if he did, to what extent.

We have previously held that firefighters holding the rank of "district chief" and "battalion chief" were exempt administrative employees. *See Smith v. City of Jackson,* 954 F.2d 296, 299 (5th Cir.1992). Similarly, the district court in *Quirk* held employees holding the rank of "captain" to be exempt executive employees. *Quirk,* 895 F.Supp. 773, 787-88. In both of these cases, however, the evidence showed that those employees had substantial management duties and exercised great discretion. Here, we have

no such evidence. The title of " 'captain' provides no guidance on whether the administrative exemption applies; rather, a fact-sensitive inquiry ... is required." *Dep't of Labor v. City of Sapulpa,* 30 F.3d 1285, 1288 (10th Cir.1994). The evidence in this case does not satisfy the City's burden of proving the Executive/Administrative exemption. On the contrary, the utter lack of probative evidence precludes us from holding that the Managers fall within the Executive/Administrative exemption as a matter of law.

### I. Statute of Limitations

The City's final defense is that the Daley Plaintiffs' claims under the FLSA are *678 barred by the statute of limitations. The City raised this issue for the first and last time in its Original Answer, filed on May 21, 1999, by stating "[a]fter discovery, Defendant may be able to show that part or all of Plaintiffs' claims may be barred by the applicable statute of limitations." This vague statement does not specify the particular statute under which the City planned to bring a limitations defense. Furthermore, the statement does not state with certainty that the City would assert such a defense at all. According to a ruling made at a pre-trial conference held on September 20, 1999, the parties completed discovery with respect to the claims raised by the Daley Plaintiffs on November 30, 1999. Soon thereafter, the Daley Plaintiffs filed for summary judgment, arguing that they were entitled to overtime compensation under the FLSA. The City responded with its own summary judgment motion asserting that the Daley Plaintiffs were not entitled to overtime compensation because of the § 207(k) exemption, the Learned Professional Exemption, and the Executive/Administrative exemption. The City never raised a limitations defense in its motion for summary judgment. Furthermore, on February 9, 2000, the City filed a Supplemental Answer. This answer further developed two affirmative defenses first asserted in the Original Answer: (1) the failure to state a claim and (2) the exempt status of Plaintiffs under the FLSA. [FN21] However, the Supplemental Answer did not elaborate on the City's assertion that Plaintiffs' claims may be barred by a statute of limitations.

FN21. The Supplemental Answer also adds the affirmative defense that Plaintiffs are not entitled to liquidated damages.

[19][20] Generally, on appeal, we do not address issues that were not raised in the lower court. *See*

*United States v. Martinez,* 228 F.3d 587, 589 n. 3 (5th Cir.2000). Thus, we will not consider the City's statute of limitations defense here. Moreover, because we find that the City waived the limitations defense at the district court level, we need not remand the issue to the district court for further proceedings.

We have held that a party " 'in his opposition to a motion for summary judgment cannot abandon an issue and then ... by drawing on the pleadings resurrect the abandoned issue.' " *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1164 (5th Cir.1983) (citing *Edward B. Marks Music Corp. v. Continental Record Co.,* 222 F.2d 488, 492 (2d Cir.1955)). [FN22] In *Hargrave,* the third-party plaintiff, in its initial third-party complaint, asserted three alternative grounds for recovery: alter ego liability, successorship liability, and contribution/ indemnity liability. *See* 710 F.2d at 1163. When the defendant moved for summary judgment, the plaintiff never raised the theories of successorship liability or contribution/indemnity. *See id.* at 1163-64. In fact, the plaintiff never mentioned before the trial court "a single fact that would trigger a genuine issue on these theories." *Id.* Ultimately, this court found that the plaintiff "abandoned its alternative theories of recovery by failing to present them *679 to the trial court," and we affirmed the trial court's grant of summary judgment in favor of the defendant. *Id.* at 1164-65.

FN22. *See also Stephens v. C.I.T. Group/ Equip. Fin., Inc.,* 955 F.2d 1023, 1026 (5th Cir.1992) (finding that the defendant waived its limitations defense at the trial court level because "aside from urging a general statute of limitations defense in its answer, [the defendant] never mentioned limitations in the trial court proceedings"). *Cf. Teamsters' Steel Haulers Local Union No. 800 v. Lakeshore Motor Freight Co.,* 484 F.Supp. 925, 929-30 (W.D.Penn.1979) (holding that "defendants do not waive the statute of limitations defense where it is presented by the pleadings even if excluded from a summary judgment motion"). In *Teamsters',* the defendants avoided waiver by asserting the limitations defense before the trial court in a petition for reconsideration of the grant of summary judgment.

The facts presented by this case resemble those of *Hargrave.* The City weakly asserted a possible limitations defense in its *Original Answer. When confronted with the Daley Plaintiffs' motion for

summary judgment, however, the City never re-asserted its limitations defense. Moreover, the City's Supplemental Answer omitted any mention of a limitations defense. The vague language in the City's Original Answer coupled with the complete absence of the issue in all subsequent documents filed with the district court convinces us that the City abandoned its limitations defense. As the First Circuit noted in *Violette v. Smith & Nephew Dyonics, Inc.,* 62 F.3d 8 (1st Cir.1995), it is clear in this case that the City's limitations defense "flickered but once, dimly, on the radar screen of this litigation and then disappeared forever." 62 F.3d at 11.

*J. Conclusion of FLSA Issues*

We find that the Daley Plaintiffs are not exempt from the overtime compensation provisions of the FLSA under the § 207(k) exemption for fire protection employees, the Learned Professional exemption, or the Executive/Administrative exemption. We also find that the City waived its statute of limitations defense. Thus, the Daley Plaintiffs are entitled to overtime compensation for hours worked in excess of forty during a seven-day workweek. *See* 29 U.S.C. § 207(a)(1). Accordingly, we REVERSE the district court's judgment and REMAND the case to the district court for a determination of the amount of overtime compensation owed by the City to the Daley Plaintiffs.

*IV. Attorney's Fees*

[21][22][23] On July 11, 2000, the district court awarded $2,800,000 in attorney's fees to Troy Blakeney, attorney for the Vela and Daley Plaintiffs. The City requests that this court reform the attorney's fees to $557,500. This court reviews the district court's award of attorney's fees for abuse of discretion and its findings of fact supporting the award for clear error. *Strong v. BellSouth Telecomms. Inc.,* 137 F.3d 844, 850 (5th Cir.1998). "Under the clearly erroneous standard, [this court] will reverse only if [it has] a definite and firm conviction that a mistake has been committed." *Canal Barge Co., Inc. v. Torco Oil Co.,* 220 F.3d 370, 375 (5th Cir.2000). Both parties stipulate that the Texas Supreme Court's decision in *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812 (Tex.1997), governs the award of attorney's fees in this case. [FN23] In *Arthur Andersen,* the Texas Supreme Court identified the following factors to be considered when determining the reasonableness of an award of attorney's fees:

FN23. We look to state law in this analysis

of attorney's fees because the fees were awarded in the suit instituted by the Vela Plaintiffs. In that case, the Vela Plaintiffs asserted state law claims for overtime compensation.

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
(2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
*680 (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

945 S.W.2d at 818.

[24] Each party submitted an expert report to the district court concerning the proper amount of attorney's fees. The court held a hearing on the issue, and the transcript from that hearing shows that the district court considered the *Arthur Andersen* factors. [FN24] Before applying the factors, the district court found that "if a contingent fee were to be applied, it would be applied to the approximate ten million dollars for the aggregate recovery," which includes overtime compensation as well as corresponding pension contributions made by the City to Plaintiffs' individual pension accounts. Regarding this decision, the district judge stated that "[i]n most cases, pension contributions are a substantial part of compensation, and there's no legal or economic logic in treating direct or indirect compensation differently." While we find no binding authority on point, the federal district court for the Southern District of New York has included pension plan contributions as part of the gross recovery subject to a contingency fee. *See Puerto v. Local One, Amalgamated Lithographers,* No. 87 CIV. 7681(RWS), 1991 WL 33341, at *3 (S.D.N.Y. Mar. 4, 1991). That court reasoned that "there is no apparent justification for excluding this portion of the settlement, which clearly represented a financial gain for [the plaintiff], from the gross recovery subject to the contingency fee." *Id.* We find the court's

reasoning in *Puerto* persuasive. Therefore, in this case, the district court's finding that the total recovery includes the pension contributions made by the City to Plaintiffs' individual pension accounts is not clearly erroneous.

> FN24. The district court described the factors as the *Johnson* factors, referring to *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974). We have recently stated that the *Johnson* factors are "comparable" to the *Arthur Andersen* factors. *See Mid- Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir.2000).

The district court separately considered each *Arthur Andersen* factor at the hearing on attorney's fees. When considering the first factor, the district court stated that the "time required was substantial" because "the intricacies of each worker's situation had to be identified, specified and, on occasion, clarified." The court found the novelty and difficulty of the questions involved to be "moderate" and the skill required to be "a high level of managerial lawyering." More specifically, the district judge found that "[t]he skill in managing the precise factual evaluation of 2600 cases and the skill that [Blakeney] brought to the labyrinth of governmental employee relations law was of the highest order required." In its brief, the City argues that the legal issues in this case are not complicated. However, when requesting more money from the City Council to fund the litigation, the City Attorney thrice emphasized the complexity of the litigation "resulting from claims under federal, state and local law, as well as the volume of documents, the unforeseen magnitude of the mechanics of computing the various components of each of the 2600 Plaintiffs' claims and the number of issues involved."

Regarding the second *Arthur Andersen* factor, the trial court noted that Blakeney was "unable to represent his principal client by reason of his accepting this case." In the Plaintiffs' fee application, however, Blakeney states that "this factor does not weigh for or against the fee award in this *681 case." Because of the conflicting evidence, we consider this factor to be a neutral factor. In applying the third factor, the district court found that Blakeney's 30% contingency fee "is a reasonable rate." In fact, the court stated that "a 30 percent contingent fee in labor litigation against the Government is on the low side," and "the customary contingency is likely to have been more like 35 to 40

percent." Pursuant to factor four, the district court considered the large recovery awarded to Blakeney's clients along with "the significance of the dollars to the individuals separately and aggregately."

The district court noted that factors five and six are neutral in this case. Regarding factor seven, the district court stated that "Mr. Blakeney is extensively experienced in his factual field and his legal field and has a reputation commensurate with his experience and his high ability." This is "reflected in what his customary hourly rate, actual or imputed, would be." While considering factor eight, the district court suggested that it is proper for a lawyer on a contingency fee case to estimate his fee per hour to be higher than a lawyer on a fixed fee case. Blakeney's estimate was approximately $100 higher than the fee paid by the City to its attorneys, but this is justified given the risk of receiving no fee at all.

[25][26] Furthermore, the district court found that the paralegals' work on the case "was of a more complex and tedious nature" than usual. Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical. *See Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir.1982). After considering the expert reports submitted by the parties and Blakeney's testimony at the hearing on attorney's fees, the district court determined that the numerous hours of paralegal work were legal in nature and recoverable as attorney's fees. Nothing in the record suggests that this finding was clearly erroneous. The district court entered an award of $2,800,000 (roughly 30% of the total recovery) as attorney's fees. [FN25]

> FN25. This total award included: (1) $2,700,000 for actual fees, calculated using an imputed hourly rate, and (2) $100,000 as a bonus for risk.

[27][28] The City contends that Blakeney's application for attorney's fees is vague in that it does not "offer any support for the reasonableness of the number of hours claimed by Blakeney for himself, his associates, or for his paralegals and staff." The district court, however, based its award of attorney's fees on the number of hours claimed in Blakeney's fee application. We must accept the factual findings upon which the district court bases its award of attorney's fees, including the determination of the number of hours reasonably expended on the litigation, unless they are clearly erroneous. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.1995).

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

The district court adopted many of the facts from the expert report on attorney's fees submitted by Plaintiffs. The court's decision not to adopt facts from the City's expert opinion does not make the court's findings clearly erroneous. *See Brady v. Fort Bend County,* 145 F.3d 691, 716 (5th Cir.1998) (finding no abuse of discretion in setting fee award based, in part, on the district court's knowledge of the facts and familiarity with the case and quality of attorneys' work over several years). Given the evidence presented in this case, the district court's findings of fact are not clearly erroneous, and the award of attorney's fees is not an abuse of discretion. Accordingly, we AFFIRM the district court's award of $2,800,000 in attorney's fees.

*V. Remaining Issues Are Moot*

[29] On September 24, 1998, the district court entered partial judgment in *682 favor of the Vela Plaintiffs on several specific issues relating to overtime compensation. The parties contest three of those issues: (1) the district court's order directing the City to pay damages for wages between January 1, 1997 and May 28, 1997 to the fire suppression personnel ("Issue 1"); (2) the district court's conclusion that overtime for the fire suppression personnel should be calculated on an eighty-hour work cycle ("Issue 2"); and (3) the district court's conclusion that the City improperly worked dispatch and arson personnel on an eight-day work cycle ("Issue 3"). We find that these three issues are moot because the parties have already settled the underlying claim.

[30][31][32][33] Our jurisprudence dictates that our duty as a court is limited to making decisions on actual controversies. *See Oil, Chem. & Atomic Workers Int'l Union v. Missouri,* 361 U.S. 363, 367, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960). We have no power to "give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before [us]." *Id.* (quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)). Generally, settlement of a dispute renders moot any case growing out of that dispute. *See ITT Rayonier Inc. v. United States,* 651 F.2d 343, 345 (5th Cir.1981). In such a situation, we find the claims moot "even if the parties remain at odds over the particular issue they are litigating." *Id.* We have repeatedly recognized that settlement between the parties renders an appeal moot and requires dismissal of the issues that have been settled. *See, e.g., OXY*

*USA, Inc. v. Babbitt,* 122 F.3d 251, 258 n. 12 (5th Cir.1997); *In re Talbott Big Foot, Inc.,* 924 F.2d 85, 87-88 (5th Cir.1991).

In this case, the record contains no final judgment ordering the City to pay overtime to the fire suppression personnel. Nonetheless, pursuant to City Council Motion No.1999 1949, the City paid fire suppression personnel overdue wages for 1997 (Issue 1) and overtime compensation based upon an eighty-hour work cycle (Issue 2). This Motion, approved and adopted on November 9, 1999, states "MOTION by Council Member Boney that the recommendation of the City Attorney, for settlement of the overtime claims ... be adopted, and settlement of these claims in the total amount of $4,436,819.12 ... [is] hereby approved by the City Council." [FN26] With respect to Issue 3, the district court entered an Agreed Partial Summary Judgment, signed by both parties and the judge, on May 28, 1999. The judgment states that upon payment of "an agreed upon sum" to the individual plaintiffs, their claims would be dismissed with prejudice. This court has stated that it will not entertain an appeal by a party from an order to which that party agreed. *See Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1137 (5th Cir.1992). Furthermore, a second City Council motion approved "settlement of lawsuit ... in the amount of $5,489,590.62 for overtime damages ...." pursuant to the Agreed Partial Summary *683 Judgment. Thus, the City paid the Vela Plaintiffs just under ten million dollars (plus pension contributions and statutory interest attributable to that amount) for overtime work. Given this fact, we find the City's contention that there was no settlement implausible. The two City Council motions refer to a "settlement." The Agreed Partial Summary Judgment strongly suggests a settlement. For these reasons, we find that Issues 1, 2 and 3 have been settled by the parties. Therefore, we have no jurisdiction to decide the issues. *See In re Talbott Big Foot, Inc.,* 924 F.2d at 87-88.

FN26. The City objects to this court's consideration of the motion because it is unauthenticated and not in the appellate record. This court has stated that it is appropriate for us to take judicial notice of a city ordinance on appeal even if it was not introduced into the trial records. *See In re Waller Creek Ltd.,* 867 F.2d 228, 238 n. 14 (5th Cir.1989) (citing *United States v. City of Miami,* 664 F.2d 435, 443 n. 16 (5th Cir.1981)) ("The power of a federal court to take judicial notice of legislative facts is

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

less constrained than its power to take notice of adjudicative facts."); *see also ITT Rayonier,* 651 F.2d at 345 n. 2 (noting that when a settlement and dismissal is not in the record, the court may take judicial notice of it).

## *VI. Conclusion*

For all the foregoing reasons, we REVERSE the district court's grant of summary judgment in favor of the City and REMAND for entry of judgment in favor of the Daley Plaintiffs following a determination of the amount of overtime compensation owed by the City to the Daley Plaintiffs. We AFFIRM the district court's award of attorney's fees to the Vela Plaintiffs. The costs of this appeal shall be borne by the City.

276 F.3d 659, 145 Lab.Cas.   P 34,422, 7 Wage & Hour Cas.2d (BNA) 930

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Case No. 00-20770

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

JUAN E. VELA; ET AL.

       Plaintiffs

PHILIP E. DALEY; TIERA ANGELLE LEGER; RICHARD WAYNE MEDEIROS;
CLINT HENDRIX

       Plaintiffs - Appellants-Cross-Appellees

   and

CALVIN THAMES; ET AL.

       Intervenor Plaintiffs - Appellants-Cross-Appellees

   v.

THE CITY OF HOUSTON

       Defendant - Appellee-Cross-Appellant
- - - - - - - - - - - - - - - - - - - - -
PHILIP E. DALEY; TIERA ANGELLE LEGER; RICHARD WAYNE MEDEIROS;
CLINT HENDRIX

       Plaintiffs-Appellants-Cross-Appellees

   v.

CITY OF HOUSTON

       Defendant - Appellee-Cross-Appellant

       On Appeal from the United States District Court
       for the Southern District of Texas, Houston Division

### CROSS-APPELLEES PHILIP E. DALEY, ET AL.'S REPLY
### IN SUPPORT OF MOTION TO DISMISS AS MOOT PORTIONS
### OF THE CITY OF HOUSTON'S APPEAL DUE TO SETTLEMENT

| | |
|---|---|
| CLORE & BLAKENEY, L.L.P. | PAUL WEBB, P.C. |
| E. Troy Blakeney | Vincent L. Marable III |
| 440 Louisiana, Suite 1900 | 221 N. Houston Street |
| Houston, Texas 77002 | Wharton, Texas 77488 |
| Telephone:   (713) 222-9115 | Telephone:   (979) 532-5331 |
| Telecopier:   (713) 222-9114 | Telecopier:   (979) 532-2902 |

ATTORNEYS FOR APPELLANTS/CROSS-APPELLEES PHILIP E. DALEY, ET AL.

TO THE HONORABLE FIFTH CIRCUIT COURT OF APPEALS:

Pursuant to Fed. R. App. P. 27(a)(4), Cross-Appellees Philip E. Daley, et al. file this Reply In Support of Motion to Dismiss As Moot Portions of the City of Houston's Appeal Due to Settlement and would show as follows:

1.     Cross-Appellees Philip E. Daley et al. filed their Motion to Dismiss on January 25, 2001. The City of Houston responded on or about January 31, 2001.

2.     The City of Houston objects to the affidavit and supporting documents attached to Cross-Appellees' Motion to Dismiss. Exhibit "1" to the Motion to Dismiss is entitled "Agreed Partial Summary Judgment Order Regarding Overtime in Excess of 40 Hours in A Seven Day Period" and comprises portions of the record on appeal. Specifically, Exhibit "1" comprises pages 1597 through 1589 of volume 6 of the appellate record. Exhibit "2" to the Motion to Dismiss is a certified copy of action taken by the City of Houston City Council dated November 9, 1999, where Council approved settlement of fire suppression overtime claims. Exhibit "3" is the affidavit of trial counsel for Cross-Appellees, E. Troy Blakeney.

3.     All of these exhibits are expressly permitted by Federal Rule of Appellate Procedure 27(a)(2)(B)(i). Federal Rule of Appellate Procedure 27(a)(2)(B)(i) addresses documents accompanying motions filed in the Court of Appeals and states that "any affidavit or other paper necessary to support a motion

must be served and filed with the motion."  Accordingly, the City of Houston's complaints concerning the exhibit attachments to the Motion to Dismiss are unfounded.  The exhibits attached to the Motion to Dismiss are expressly permitted by Federal Rule of Appellate Procedure 27.

4.    The City of Houston asserts that it did not receive anything in return for settlement of the overtime claims.  The district court's Agreed Partial Summary Judgment Order Regarding Overtime in Excess of Forty Hours in a Seven Day Period expressly provides that upon payment of the agreed upon sums, the specific claims of those individual Cross-Appellees listed in Exhibit "A" to the order which are related to overtime worked in excess of 40 hours while assigned to arson, dispatch and telemetry would be dismissed from the suit with prejudice.  (6 R. 1595; Exhibit "1" to Motion to Dismiss)[1]  There is no similar order providing for dismissal with prejudice with respect to fire suppression overtime claims.  However, the settlement payments made by the City of Houston for the fire suppression overtime claims constitute a complete bar to any further prosecution of such actual damage claims by

---

[1] This court has stated that it will not entertain an appeal by party from an order to which the party agreed.  See Tel-Phonic Services, Inc. v. TBS International, Inc., 975 F.2d 1134, 1137 (5th Cir. 1992) ("A party will not be heard to appeal the propriety of an order to which it agreed."); Haitian Refugee Center v. Civiletti, 614 F.2d 92, 93 (5th Cir. 1980) ("The defendants cannot appeal from an injunction to which they agreed.") See also Swift & Co. v. United States, 48 S.Ct. 311, 324 (1928) ("But a decree, which appears by the record to have been rendered by consent is always affirmed without considering the merits of the cause.") (internal quotation marks and citation omitted) . . . .

2

Cross-Appellees.

5.     To the extent that the City of Houston contends that there was no compromise between Cross-Appellees and the City of Houston, with respect to the settlements paid by the City of Houston and approved by City Council, the appellate record reflects just the opposite. On February 10, 1999, the parties presented a "Joint Status Report" to the district court. (6 R. 1563-1555) The Joint Status Report clearly reflects that counsel for the City of Houston and counsel for Cross-Appellees were negotiating with each other to arrive at the specific amounts owed to Cross-Appellees for their overtime claims.

6.     For example, the Joint Status Report states that with respect the calculations for arson, dispatch, and telemetry overtime, counsel for the respective parties had reached agreements on the beginning and ending dates for calculating damages and the appropriate interest rate figure of .58273559. (6 R. 1560). The Joint Status Report further states that "the parties have agreed upon a method of reconciling differences of $500.00 or less." (6 R. 1559).

7.     Similarly, with respect to fire suppression calculations, the Joint Status Report reflects that counsel for the respective parties had reached agreement on the following issues: (a) the beginning and ending dates for calculating damages for the

3

time period 1-1-92 through 12-31-95, (b) no overtime was accrued in or payable for

1996, (c) the mathematical formula to be used for firefighters who worked partial

shifts during a calendar year was a pro-rata calculation designed to compensate the

firefighter if overtime hours were accrued, and (d) the dates for accrual of interest and

the interest rate figure of .58273559 (6 R. 1559-1558). The record clearly reflects the

settlement payments in this case were the result of compromise negotiations between

respective counsel for the parties.

8.      The City of Houston relies upon the United States Supreme Court

decision in <u>Little v. Bowers</u>, 134 U.S. 547, 552-53, 10 S.Ct. 620, 621 (1890). In

<u>Little v. Bowers</u>, the petitioner sought review of issues relating to tax assessments for

the years 1876-1882. 10 S.Ct. at 620. The respondent moved to dismiss the case on

the grounds that the petitioner had paid and satisfied the taxes in full. <u>Id</u>. The United

States Supreme Court dismissed the proceeding and refused to address the merits of

the case because it found that the petitioner's payment of taxes was voluntary and

rendered any controversy between the parties moot. The Supreme Court stated that

"it is well settled that when there is no actual controversy, involving real and

substantial rights, between the parties to the record, the case will be dismissed." <u>Id</u>

at 622. Further, the Supreme Court, quoting with approval earlier decisions, stated

4

as follows:

> Where a party pays an illegal demand with a full knowledge of all the
> facts which render such demand illegal, without an immediate and
> urgent necessity therefor, or unless to release his person or property
> from detention, or to prevent an immediate seizure of his person or
> property, such payment must be deemed to be voluntary, and cannot be
> recovered back. And the fact that the party, at the time of making the
> payment files a written protest, does not make the payment involuntary.

Id. at 621 (internal quotation marks and citations omitted). It is clear that Little v.
Bowers does not support the City of Houston's arguments. Rather, Little v. Bowers
compels dismissal of the City of Houston's Issues 4, 5 and 6 as moot. The City of
Houston cannot demonstrate that its settlement of the overtime claims in this case was
involuntarily or was to prevent immediate seizure of its property.

9.    The City of Houston also relies upon the decision in Tungseth v. Mutual
of Omaha Insurance Company, 43 F.3d 406, 409 (8th Cir. 1994). In that case, the
appellee obtained a jury verdict and judgment of $25,256.00 against the appellant.
Id. at 407. The appellant attempted to satisfy the judgment by tendering a check for
$16,504.80 and withholding a total of $8,751.20 which appellant paid for taxes to the
federal and state governments. Id. The appellee eventually, through execution,
obtained the $8,751.20 which had been withheld. Id. at 408. This resulted in the
appellant making a double payment of the $8,751.20, once through execution and

5

once through payment to the federal and state governments. The court of appeals held that to the extent that appellant could recover its double payment from either the federal and state governments or from the appellee, the appeal was not moot. Id. at 409. There is no double payment situation in this appeal by the City of Houston like that which was presented in Tungseth v. Mutual of Omaha.

10.     With respect to Issue 6 and the overtime claims relating to arson, telemetry and dispatch, those claims have been dismissed with prejudice. It is not possible for the City of Houston to obtain any relief from this Court which would permit it to seek return of that money from the individual Cross-Appellees. Likewise, with respect to the voluntary payments made to the individual Cross-Appellees for their suppression overtime claims, the City of Houston cites no authority whereby it could require the individual Cross-Appellees to return the payments they received in settlement for their suppression overtime claims. There is no live controversy between the City of Houston and Cross-Appellees with respect to Issues 4, 5 and 6 of the City of Houston's cross-appeal. The City of Houston voluntarily settled with Cross-Appellees, paid the individual Cross-Appellees, and paid the Houston Firefighters' Relief and Retirement Fund the City's portion of its pension contributions attributable to the settlement amounts paid to Cross-Appellees.

6

Cross-Appellees request that this Court dismiss as moot Issues 4, 5 and 6 raised

by the City of Houston due to the settlement of those claims.

Respectfully submitted,


CLORE & BLAKENEY, L.L.P.


*E. Troy Blakeney* / by permission of Jy Reed

E. TROY BLAKENEY
State Bar No. 02431900

440 Louisiana, Suite 1900
Houston, Texas 77002
Telephone: (713) 222-9115
Telecopier: (713) 222-9114


PAUL WEBB, P.C.


*Vincent L. Marable III* / by permission of Jy Rea

VINCENT L. MARABLE III
State Bar No. 12961600

221 N. Houston Street
Wharton, Texas 77488
Telephone: (979) 532-5331
Telecopier: (979) 532-2902


ATTORNEYS FOR APPELLANTS PHILIP
E. DALEY, ET AL.

7